**FILED**

JUL 25 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

1  MICHAEL ANTHONY SAAVEDRA
   C.D.C. NO. E07529
2  P.O. BOX : 3481
   CORCORAN, CA. 93212
3
   PRO SE PLAINTIFF
4

5          UNITED STATES DISTRICT COURT

6      FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8  MICHAEL ANTHONY SAAVEDRA,          CASE NO. 2113CW1499KJN(PC)
              PLAINTIFF,
9

10            V.                      PLAINTIFF'S PRO SE
                                      VERIFIED COMPLAINT
11 SCOTT KERNAN (UNDER SECRETARY; C.D.C.);  UNDER THE FEDERAL
   ANTHONY CHAUS ( CHIEF; O.C.S.);   CIVIL RIGHTS ACT ( 42
12 DOUGLAS MC CLURE (AGENT; O.C.S.);  U.S.C. § 1983) FOR
   CONNIE GIPSON (WARDEN; C.S.P.);   VIOLATIONS OF CIVIL
13 JEANINE CASTRO (CAPTAIN, C.S.P.);  RIGHTS.
   S. FINN (LIEUTENANT; I.G.I., C.S.P.);
14 D.J. RUIZ(LIEUTENANT, I.G.I.; C.S.P.);  DEMAND FOR JURY TRIAL.
   R. BEER ( SERGEANT ; C.S.P. S.H.U.);
15 J. ORTEGA (PRISON GUARD- C.S.P.);
   A. CASILLAS (PRISON GUARD; C.S.P.);
16 RAMIREZ (PRISON GUARD) C.S.P.);
   HAYSE (PRISON GUARD) C.S.P.);
17 LERMA (PRISON GUARD) C.S.P.);
   S. BYLUND (CHIEF; MENTAL HEALTH
18 SERVICES; C.S.P. ) ;
   T. BLANCHARD ( SENIOR SUPERVISING
19 PSYCHOLOGIST ) C.S.P.);
   E. SOLIMAN (PSYCHOLOGIST, C.S.P.);
20 GONZALES (PSYCH. TECH.) C.S.P.);
   MOSS ( PRISON NURSE ) C.S.P. ) ;
21 GRAT ( PRISON NURSE ) C.S.P.);
   D. HANSEN (PRISON COOK
22 SUPERVISOR ) , C.S.P. ) ;
   S. FUENTES (PRISON COOK SUPERVISOR);
23 J. UHLIK (PRISON COOK SUPERVISOR );
   A. GUTIÉRREZ - RUSSELL ( PRISON
24 MAIL ROOM SUPERVISOR ) );
   NAVARRO (PRISON GUARD) C.S.P.);
25 KAREN CRIBES ( PRISON APPEALS
   COORDINATOR ); AND
26 N. PARRA (PRISON APPEALS
   COORDINATOR ),
27          DEFENDANTS.

28

I.

INTRODUCTION

1.        THIS IS A CIVIL RIGHTS ACTION FILED BY MICHAEL ANTHONY SAAVEDRA, A STATE PRISONER, FOR DAMAGES AND INJUNCTIVE RELIEF UNDER 42 U.S.C. §1983, BROUGHT AGAINST VARIOUS CALIFORNIA DEPARTMENT OF CORRECTIONS (C.D.C.) OFFICIALS AND CORCORAN STATE PRISON'S (C.S.P.) PRISON PERSONNEL FOR HAVING CAUSED PLAINTIFF TO BE WRONGLY RETAINED IN THE SECURITY HOUSING UNIT (S.H.U.) IN SOLITARY CONFINEMENT FOR OVER 8-YEARS ON THE BASIS OF ALLEGED PRISON GANG ACTIVITY; WHEREIN, WITHOUT DUE PROCESS OF LAW; ON THE BASIS OF COERCED, ERRONEOUS, FALSE, UNRELIABLE AND COMPLETELY UNREASONABLE EVIDENCE; WITHOUT SUFFICIENT NOTICE OF INFORMATION FOR PLAINTIFF TO ADEQUATELY PREPARE AND PRESENT HIS VIEWS; WITHOUT A MEANINGFUL OPPORTUNITY TO DO SO WITH THE CRITICAL DECISION MAKER IN A MEANINGFUL MANNER AND WITHOUT ANY MEANINGFUL PERIODIC REVIEWS AMOUNTING TO MORE THAN JUST MEANINGLESS GESTURES, EQUALING AN ARBITRARY ACTION AND DEPRIVATION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

2.        AS A RESULT OF DEFENDANTS' WRONGFUL RETENTION OF PLAINTIFF IN LONG TERM SOLITARY CONFINEMENT IN THE S.H.U. AT CORCORAN, DEFENDANTS HAVE ALSO, WITH DELIBERATE INDIFFERENCE, SUBJECTED PLAINTIFF TO CONDITIONS OF CONFINEMENT THAT VIOLATE

2.

1  THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION,

2  TO WIT ; UNSANITARY FOOD PREPARATION AND SERVICE ;

3  FAILURE TO PROVIDE ADEQUATE CLEANING SUPPLIES AND TOOLS

4  NECESSARY TO MAINTAIN PROPER SANITATION ; THEREBY

5  PLACING HIS HEALTH AT RISK ; AND DELIBERATE

6  INDIFFERENCE TO PLAINTIFF'S SERIOUS MENTAL HEALTH

7  CONDITION AND NEEDS ; INCLUDING FAILURE TO

8  ADEQUATELY TRAIN AND SUPERVISE STAFF .

9      3.          PLAINTIFF ALSO BRINGS SUIT AGAINST

10  DEFENDANTS FOR VIOLATING HIS RIGHTS UNDER THE

11  FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

12  FOR : a.) THREAT OF RETALIATION FOR GRIEVANCES

13  (PROTECTED SPEECH AND CONDUCT ) ; b.) INTERFERENCE

14  AND BREACH OF CONFIDENTIAL ; ATTORNEY - CLIENT

15  COMMUNICATION ; AND c.) DENIAL OF PLAINTIFF'S

16  RIGHT OF ACCESS TO THE COURTS .

17

18                  II .

19              JURISDICTION

20      4.          THIS ACTION IS BROUGHT PURSUANT TO 42

21  U.S.C. § 1983 TO REDRESS THE DEPRIVATION ; UNDER COLOR

22  OF STATE LAW ) OF RIGHTS SECURED BY THE UNITED STATES

23  CONSTITUTION . JURISDICTION IS BASED ON 28 U.S.C. §

24  § 1331 ; 1343 AND §§ 2201 ; 2202 . THE COURT ALSO HAS

25  PENDENT JURISDICTION OVER THE STATE CLAIMS PURSUANT

26  TO 28 U.S.C. § 1367 .

27      5.          VENUE IS PROPER IN THE EASTERN DISTRICT

28  OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1391 (b)(1) , IN

                    3.

THAT THE C.D.C. OFFICIALS NAMED AS DEFENDANTS HEREIN RESIDE AND HAVE THEIR OFFICIAL OFFICES IN THIS DISTRICT (SACRAMENTO - SEE APPENDIX 'A' FOR DEFENDANTS' PLACE OF BUSINESS FOR SERVICE)

III.

PARTIES

6.      PLAINTIFF, MICHAEL ANTHONY SAAVEDRA, IS, AND WAS AT ALL TIMES MENTIONED HEREIN, A PRISONER OF THE STATE, IN THE CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS (C.D.C.) AND IMPRISONED IN SOLITARY CONFINEMENT WITHIN THE SECURITY HOUSING UNIT (S.H.U.) AT CORCORAN STATE PRISON (C.S.P.).

7.      DEFENDANT SCOTT KERNAN, WAS AT ALL TIMES MENTIONED HEREIN, THE C.D.C. UNDERSECRETARY AND OPERATIONS DIRECTOR. HE WAS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE OFFICE OF CORRECTIONAL SAFETY (O.C.S.) AND ALL HIGH SECURITY HOUSING UNITS (S.H.U.S) THROUGHOUT THE DEPARTMENT, INCLUDING CORCORAN'S S.H.U.. DEFENDANT KERNAN IS SUED IN BOTH HIS OFFICIAL AND INDIVIDUAL CAPACITIES.

8.      DEFENDANT ANTHONY CHAUS, WAS AT ALL TIMES MENTIONED HEREIN, THE CHIEF OF C.D.C.'S OFFICE OF CORRECTIONAL SAFETY (O.C.S.). THE O.C.S. IS A SPECIAL UNIT WITHIN C.D.C. CHARGED WITH INVESTIGATING AND VALIDATING C.D.C. PRISONERS AND PAROLEES AFFILIATED WITH PRISON GANGS. DURING ALL TIMES MENTIONED HEREIN, HE OVERSAW AND RAN THE O.C.S. AND ITS AGENTS. DEFENDANT CHAUS IS SUED IN BOTH HIS OFFICIAL AND INDIVIDUAL CAPACITIES.

//

4.

9.      DEFENDANT DOUGLAS MC CLURE, WAS AT ALL RELEVANT TIMES MENTIONED HEREIN, A SPECIAL AGENT OF THE O.C.S. AND RESPONSIBLE FOR REVIEWING "GANG-VALIDATION PACKAGES" SUBMITTED TO THE O.C.S. BY PRISON INSTITUTIONAL GANG INVESTIGATORS (I.G.I.). PART OF HIS DUTIES WAS TO DETERMINE WHETHER THE EVIDENCE SUPPORTING THE GANG VALIDATION PACKAGE MEETS C.D.C.'S STANDARDS, AND WHETHER THE PRISONER HAD AN OPPORTUNITY TO EXPRESS HIS VIEWS ON VALIDATION BY REVIEWING EACH ITEM OF EVIDENCE AND DOCUMENTATION TO ENSURE THAT THE PRISONER WAS DISCLOSED THE EVIDENCE AND INTERVIEWED AT LEAST 24-HOURS LATER AND ENSURING THAT THE I.G.I. ADEQUATELY REPLIED TO ANY RESPONSE BY THE PRISONER TO THE EVIDENCE. DEFENDANT MC CLURE IS SUED IN BOTH HIS OFFICIAL AND INDIVIDUAL CAPACITIES.

10.      DEFENDANT CONNIE GIPSON WAS AT ALL TIMES MENTIONED HEREIN, THE WARDEN OF CORCORAN STATE PRISON (C.S.P.) AND LEGALLY RESPONSIBLE FOR THE OPERATION OF C.S.P. AND FOR THE WELFARE OF ALL ITS PRISONERS. DEFENDANT GIPSON IS SUED IN BOTH HER OFFICIAL AND INDIVIDUAL CAPACITIES.

11.      DEFENDANT JEANINE CASTRO WAS AT ALL TIMES MENTIONED HEREIN, THE C.S.P. FACILITY 4B S.H.U. CAPTAIN AND RESPONSIBLE FOR THE OPERATION OF THE C.S.P. 4B S.H.U. AND FOR THE WELFARE OF ALL 4B S.H.U. PRISONERS. DEFENDANT CASTRO IS SUED IN HER INDIVIDUAL CAPACITY.

12.      DEFENDANT S. PINA WAS AT ALL TIMES MENTIONED HEREIN, THE C.S.P. I.G.I. AND RESPONSIBLE FOR REVIEWING 4B S.H.U. PRISONERS' "GANG STATUS" EVERY 180-DAYS AND ANNUALLY

5.

1  TO DETERMINE IF SUCH PRISONERS ARE "CURRENTLY ACTIVE"

2  IN ORDER TO UPDATE THEIR GANG STATUS AND DETERMINE

3  WHETHER THEY QUALIFY FOR RELEASE FROM THE S.H.U. .

4  DEFENDANT FILA IS SUED IN HIS INDIVIDUAL CAPACITY .

5     13.        DEFENDANT D.T. RUIZ WAS AT ALL TIMES MENTIONED

6  HEREIN , THE C.S.P. I.G.I. AND THE "CRITICAL DECISION MAKER"

7  IN PLAINTIFFS , "RE-VALIDATION" AND CONTINUED INDIFINITE

8  SOLITARY CONFINEMENT IN THE C.S.P. S.H.U. . HE WAS LEGALLY

9  RESPONSIBLE FOR PROVIDING PLAINTIFF WITH A MEANINGFUL

10 OPPORTUNITY TO BE HEARD AND SUFFICIENT NOTICE OF THE

11 VALIDATION EVIDENCE . HE WAS ALSO RESPONSIBLE FOR ENSURING

12 THAT THE EVIDENCE WAS RELIABLE AND SHOWING SPECIFIC ACTS

13 OF "GANG ACTIVITY" . DEFENDANT RUIZ IS SUED IN HIS

14 INDIVIDUAL CAPACITY .

15    14.        DEFENDANT R. BEER WAS AT ALL TIMES MENTIONED

16 HEREIN , ASSIGNED TO C.S.P. S.H.U. 4B-4 AS THE 2ND. WATCH

17 SERGEANT . AS SUCH , HE WAS RESPONSIBLE FOR ALL STAFF ,

18 PRISON GUARDS AND ALL PRISONERS ASSIGNED TO ( OR

19 VISITING ) 4B-4L S.H.U. , INCLUDING DAY TO DAY OPERATIONS,

20 MAINTENANCE , SECURITY , FEEDING , SANITARY CONDITIONS AND

21 GENERAL WELFARE OF ITS PRISONERS TO "INSURE HUMAN

22 DECENCY AND SANITATION" . DEFENDANT BEER IS SUED IN HIS

23 INDIVIDUAL CAPACITY .

24    15.        DEFENDANT J. ORTEGA WAS AT ALL TIMES

25 MENTIONED HEREIN , A C.S.P. PRISON GUARD ASSIGNED AS THE

26 I.G.I.'S ASSISTANT OR "RUNNER" . DEFENDANT ORTEGA WAS

27 NOT AN I.G.I. NOR THE CRITICAL DECISION MAKER , HIS TASK

28 //

6.

1  WAS TO SEARCH AROUND THE PRISON FOR GANG ACTIVITY EVIDENCE

2  AND RUN ERRANDS FOR THE I.G.I. ( DELIVER PAPER WORK ) .

3  DEFENDANT ORTEGA IS SUED IN HIS INDIVIDUAL CAPACITY .

4  16.      DEFENDANT CASILLAS WAS AT ALL TIMES

5  MENTIONED HEREIN ) A C.S.P. PRISON GUARD ASSIGNED TO THE

6  4B-4L S.H.U. . AS SUCH ) HE WAS RESPONSIBLE FOR MAKING ,

7  PREPARING AND SERVING 4B-4L PRISONERS' FOOD ) CLEANING

8  AND SANITIZING THE FOOD SERVING UTENCILS , FOOD PREPARATION

9  AREAS ) FOOD CARTS ) ISSUING NECESSARY SUPLIES AND

10 ASSURING THE OVERALL HEALTH , SAFETY AND WELFARE OF THE

11 4B-4L PRISONERS . DEFENDANT CASILLAS IS SUED IN HIS

12 INDIVIDUAL CAPACITY .

13 17.      DEFENDANT NAVARRO WAS AT ALL TIMES MENTIONED

14 HEREIN ) A C.S.P. PRISON GUARD ASSIGNED TO THE 4B-4L S.H.U. .

15 AS SUCH ) HE WAS RESPONSIBLE FOR MAKING ) PREPARING AND

16 SERVING 4B-4L PRISONERS' FOOD ) CLEANING AND SANITIZING THE

17 UNIT ) SERVING UTENCILS ) FOOD PREPARATION AREAS ) FOOD CARTS ,

18 ISSUING SUPPLIES AND PRISONERS' MAIL AND ASSURING THE

19 OVERALL HEALTH ) SAFETY AND WELFARE OF THE 4B-4L PRISONERS

20 DEFENDANT NAVARRO IS SUED IN HIS INDIVIDUAL CAPACITY .

21 18.      DEFENDANT RAMIREZ WAS AT ALL TIMES

22 MENTIONED HEREIN ) A C.S.P. PRISON GUARD ASSIGNED TO THE

23 4B-4L S.H.U.. AS SUCH ) SHE WAS RESPONSIBLE FOR MAKING ,

24 PREPARING AND SERVING 4B-4L PRISONERS' FOOD ) CLEANING

25 AND SANITIZING THE UNIT ) SERVING UTENCILS ) FOOD PREPARA-

26 TION AREAS ) FOOD CARTS ) ISSUING NECESSARY SUPPLIES AND

27 ASSURING THE OVERALL HEALTH ) SAFETY AND WELFARE OF THE

28 //

48-4L PRISONERS . DEFENDANT RAMIREZ IS SUED IN HER INDIVIDUAL CAPACITY .

19.     DEFENDANT HAYSE WAS AT ALL TIMES MENTIONED HEREIN ) A C.S.P. PRISON GUARD ASSIGNED TO THE 48-4L S.H.U. . AS SUCH ) SHE WAS RESPONSIBLE FOR MAKING ) PREPARING AND SERVING 48-4L PRISONERS' FOOD ) CLEANING AND SANITIZING THE UNIT ) SERVING UTENCILS ) FOOD PREPARATION AREAS ) FOOD CARTS ) ISSUING NECESSARY SUPLIES AND ASSURING THE OVERALL HEALTH ) SAFETY AND WELFARE OF THE 48-4L PRISONERS . DEFENDANT HAYSE IS SUED IN HER INDIVIDUAL CAPACITY .

20.     DEFENDANT LERMA WAS AT ALL TIMES MENTIONED HEREIN ) A C.S.P. PRISON GUARD WHON WORKED IN 48-4L ON 3RD. WATCH ( OVERTIME/RELIEF ) . AS SUCH ) HIS DUTIES AND RESPONSIBILITIES WERE SERVING 48-4L PRISONERS FOOD , INCLUDING THE MAKING AND PREPARING OF IT ) CLEANING AND SANITIZING THE UNIT ) SERVING UTENCILS ) FOOD PREPARATION AREAS ) FOOD CARTS ) ISSUING NECESSARY SUPLIES ) PRISONER YARD AND SHOWER ESCORTS AND PRISONER MAIL DELIVERY ; AND ASSURING THE OVERALL HEALTH ) SAFETY AND WELFARE OF THE 48-4L PRISONERS . DEFENDANT LERMA IS SUED IN HIS INDIVIDUAL CAPACITY .

21.     DEFENDANT S. BYLUND WAS AT ALL TIMES MENTIONED HEREIN ) THE C.S.P. "CHIEF OF MENTAL HEALTH " . AS SUCH ) SHE WAS LEGALLY AND FULLY RESPONSIBLE FOR THE OPERATION AND OVERSIGHT OF THE MENTAL HEALTH SERVICES IN THE C.S.P. S.H.U. INCLUDING ITS MENTAL HEALTH STAFF . AS SUCH ) DEFENDANT BYLUND IS SUED IN HER OFFICIAL AND INDIVIDUAL

//                                                         8 .

CAPACITIES.

22. DEFENDANT T. BLANCHARD WAS AT ALL TIMES MENTIONED HEREIN, THE C.S.P. "SENIOR PSYCHOLOGIST SUPERVISOR". AS SUCH, SHE WAS LEGALLY AND FULLY RESPONSIBLE FOR THE DIRECT AND DAILY OVERSIGHT OF THE C.S.P. S.H.U. MENTAL HEALTH PROGRAMS AND PATIENT MANAGEMENT SERVICES PROVIDED TO THE C.S.P. S.H.U. PRISONERS. DEFENDANT BLANCHARD IS SUED IN HER INDIVIDUAL CAPACITY.

23. DEFENDANT E. SOLIMAN WAS AT ALL TIMES MENTIONED HEREIN, ASSIGNED AS PLAINTIFF'S "PRIMARY (MENTAL HEALTH) CLINICAL CASE MANAGER" (PSYCHOLOGIST) AND WAS LEGALLY AND FULLY RESPONSIBLE FOR DIRECTLY PROVIDING PLAINTIFF WITH MENTAL HEALTH CARE, TREATMENT AND THERAPY PROGRAMS. DEFENDANT SOLIMAN IS SUED IN HER INDIVIDUAL CAPACITY.

24. DEFENDANT GONZALES WAS AT ALL TIMES MENTIONED HEREIN, ASSIGNED TO THE 4B-4L S.H.U. AS A "LICENSED PSYCHIATRIC TECHNICIAN" (L.P.T.). AS SUCH, SHE WAS RESPONSIBLE FOR ATTENDING TO AND MONITORING OF THE 4B-4L S.H.U. PRISONERS' MENTAL HEALTH NEEDS AND CONDITIONS. DEFENDANT GONZALES IS SUED IN HER INDIVIDUAL CAPACITY.

25. DEFENDANT MOSS WAS AT ALL TIMES MENTIONED HEREIN, ASSIGNED TO THE 4B-4L S.H.U. AS A "LICENSED VOCATIONAL NURSE" (L.V.N.). HER PRIMARY DUTIES WERE DISPENSING MEDICATIONS TO THE 4B-4L PRISONERS. DEFENDANT MOSS IS SUED IN HER INDIVIDUAL CAPACITY.

26. DEFENDANT GRAY WAS AT ALL TIMES MENTIONED

//

7.

HEREIN ) ASSIGNED TO THE 4B-4L S.H.U. AS A L.V.N. AND

RESPONSIBLE FOR DISPENSING MEDICATIONS TO SAID PRISONERS.

DEFENDANT GRAY IS SUED IN HER INDIVIDUAL CAPACITY.

27.        DEFENDANT D. HANSEN WAS AT ALL TIMES

MENTIONED HEREIN ) THE C.S.P. "CORRECTIONAL SUPERVISING

COOK" ) ASSIGNED TO THE "LEVEL FOUR MAIN KITCHEN" AND WAS

DIRECTLY RESPONSIBLE FOR THE PROPER PREPARATION ) QUALITY

AND QUANTITY OF MEALS AND THE SERVICE OF MEALS AND TO

DIRECT ) INSTRUCT AND SUPERVISE THE WORK OF ASSIGNED STAFF

IN FOOD PREPARATION AND FACILITY AND EQUIPMENT SANITATION".

DEFENDANT HANSEN IS SUED IN HIS INDIVIDUAL CAPACITY.

28.        DEFENDANT S. FUENTES WAS AT ALL TIMES

MENTIONED HEREIN ) THE C.S.P. "SUPERVISING CORRECTIONAL COOK",

ASSIGNED TO THE "LEVEL FOUR MAIN KITCHEN" AND WAS "DIRECTLY

RESPONSIBLE FOR THE SUPERVISING AND TRAINING OF THE

CORRECTIONAL SUPERVISING COOKS". DEFENDANT FUENTES IS

SUED IN HER INDIVIDUAL CAPACITY.

29.        DEFENDANT J. UHLIK WAS AT ALL TIMES MENTIONED

HEREIN ) THE C.S.P. "SUPERVISING CORRECTIONAL COOK", ASSIGNED

TO THE "LEVEL FOUR MAIN KITCHEN" AND WAS "DIRECTLY RESPONSIBLE

FOR THE SUPERVISING AND TRAINING OF THE CORRECTIONAL

SUPERVISING COOKS". DEFENDANT UHLIK IS SUED IN HIS

INDIVIDUAL CAPACITY.

30.        DEFENDANT A. GUTIERREZ-RUSSELL WAS AT

ALL TIMES MENTIONED HEREIN ) ASSIGNED AS THE C.S.P. MAIL-

ROOM SUPERVISOR AND DIRECTLY RESPONSIBLE FOR ALL

INCOMING AND OUTGOING PRISONER MAIL ) INCLUDING ALL

CONFIDENTIAL AND LEGAL MAIL. DEFENDANT GUTIERREZ-

1   MUSTEL IS SUED IN HER INDIVIDUAL CAPACITY .

2       31.        DEFENDANT KAREN CRIBBS WAS AT ALL TIMES

3   MENTIONED HEREIN , A C.S.P. "APPEALS COORDINATOR" AND

4   LEGALLY RESPONSIBLE FOR FILING AND PROCESSING C.S.P.

5   PRISONER GRIEVANCES ( C.D.C. 602 APPEAL FORMS ) .

6   DEFENDANT CRIBBS IS SUED IN HER INDIVIDUAL CAPACITY .

7       32.        DEFENDANT J. PARRA WAS AT ALL TIMES

8   MENTIONED HEREIN , A C.S.P. "APPEALS COORDINATOR" AND

9   LEGALLY RESPONSIBLE FOR FILING AND PROCESSING C.S.P.

10  PRISONER GRIEVANCES ( C.D.C. 602 APPEAL FORMS ) .

11  DEFENDANT PARRA IS SUED IN HER INDIVIDUAL CAPACITY .

12      33.        DEFENDANTS , AT ALL TIMES MENTIONED HEREIN ,

13  ACTED UNDER THE COLOR OF CALIFORNIA LAW .

14

15                        IV.

16                       FACTS

17  A.      FACTS PERTAINING TO PLAINTIFF'S SOLITARY AND
            INDEFINITE SECURITY HOUSING UNIT CONFINEMENT.
18  ─────────────────────────────────────────────────────

19

20      34.        PLAINTIFF , MICHAEL ANTHONY SAAVEDRA , IS A

21  43-YEAR OLD MEXICAN-AMERICAN WHO GREW UP IN THE SAN

22  GABRIEL VALLEY AREA OF LOS ANGELES, CALIFORNIA , AND IS

23  SERVING A 21-YEAR SENTENCE FOR A 1996 ARMED CAR-

24  ROBBERY WITH A MAXIMUM PRISON RELEASE DATE OF 2017 .

25      35.        ALL OF PLAINTIFF'S ADULT AND JUVENILE ARRESTS

26  AND CONVICTIONS HAVE BEEN FOR CAR-THEFT RELATED OFFENSES

27  WITH THE EXCEPTION OF ONE DRUG AND ONE GUN POSSESSION

28  CHARGE , HOWEVER , PLAINTIFF HAS NO HISTORY OF GANG-

1 RELATED ARRESTS, CONVICTIONS OR POLICE DEPARTMENT

2 CONTACT AS A JUVENILE OR ADULT.

3   36.     IN FEBRUARY OF 2002, PLAINTIFF ARRIVED AT

4 SALINAS VALLEY STATE PRISON WHERE HE ENROLLED IN SCHOOL,

5 SUCCESSFULLY ACQUIRED HIS G.E.D. AND WAS ELECTED AS AN

6 EXECUTIVE MEMBER OF THE WARDEN'S "MEN' ADVISORY

7 COMMITTEE" AND NEVER RECEIVED A SINGLE DISCIPLINARY —

8 RULES VIOLATION OR GANG ACTIVITY REPORT.  TWO YEARS

9 LATER, ON APRIL 15, 2004, PLAINTIFF WAS PLACED IN "THE

10 HOLE" ( ADMINISTRATIVE SEGREGATION ) AT SALINAS VALLEY    FOR

11 ALLEGATIONS OF HAVING A ROMANTIC RELATIONSHIP WITH A

12 FEMALE PRISON GUARD  THERE.

13   37.     TWO DAYS LATER, ON APRIL 17, 2004, AFTER

14 PLAINTIFF REFUSED TO "DEBRIEF" ( INFORM ON THE FEMALE GUARD AND

15 HIMSELF ) PRISON OFFICIALS THERE BEGAN DEVELOPING AND

16 APPROVING A VALIDATION OF PLAINTIFF AS A PRISON GANG

17 "ASSOCIATE" ( OF THE "MEXICAN MAFIA" ).

18   38.     AFTER SAID VALIDATION, PLAINTIFF WAS

19 ULTIMATELY TRANSFERRED TO THE C.S.P. SHU IN JANUARY OF

20 2008 .

21   39.     ONE MONTH LATER, ON JANUARY 31, 2008, C.S.P.

22 I.G.I. CONDUCTED AN INVESTIGATION OF PLAINTIFF REGARDING

23 ALLEGED "SAFETY CONCERNS WITH THE  MEXICAN MAFIA PRISON

24 GANG" ( SEE EXHIBIT 'ONE' ATTACHED HERETO ) BASED ON AN

25 ALLEGED "NOTE  THAT WAS FORWARDED TO THE C.S.P. I.G.I. BY

26 AN INFORMANT " WHICH ALLEGEDLY IDENTIFIES PLAINTIFF "AS

27 BEING IN BAD STANDING WITH  THE MEXICAN MAFIA" ( Ibid ),

28 "OWEING #1,500.00 TO A MEXICAN MAFIA MEMBER AND TAKEN OFF

1  MEXICAN MAFIA PROGRAM " ( SEE EXHIBITS 'TWO' AND 'THREE'

2  ATTACHED HERETO ), IN WHICH C.S.P. I.G.I. VALIDATED PLAINTIFF

3  AS "HAVING SAFETY CONCERNS WITH MEMBERS/ASSOCIATES OF

4  THE MEXICAN MAFIA PRISON GANG AND TO BE KEPT IN

5  SOLITARY — SINGLE CELL / WALK ALONE CONFINEMENT " ( SEE

6  EXHIBIT 'ONE' ATTACHED HERETO ).

7      40.      FROM 2008 TO 2010, PLAINTIFF APPEARED BEFORE

8  THE C.S.P. S.H.U. "INSTITUTIONAL CLASSIFICATION COMMITTEE " ( I.C.C. )

9  REVIEW BOARD FOR " 180-DAY " AND " ANNUAL " S.H.U. " REVIEWS ".

10  THESE "REVIEWS" WERE LESS THAN 8-MINUTES LONG AND SOLELY

11  FOCUSED ON WHETHER PLAINTIFF WAS SUICIDAL OR WOULD

12  "DEBRIEF " I. (F.N.)

13      41.      EACH OF THESE I.C.C. "REVIEWS " STATED TO PLAINTIFF

14  THAT THEY WOULD NOT CONSIDER HIS "GANG STATUS" NOR HIS POSSIBLE

15  RELEASE FROM THE S.H.U. UNTILL NOVEMBER OF 2010 — AFTER 6-YEARS

16  FROM HIS INITIAL 2004 SALINAS VALLEY VALIDATION — UNLESS HE

17  DEBRIEFED .

18      42.      AS SUCH, ON OCTOBER 28, 2010, DEFENDANT ORTEGA

19  APPROACHED PLAINTIFF AT HIS CELL DOOR (4B-4L-52) AND TOLD HIM

20  THAT THE C.S.P. I.G.I. RUIZ (DEFENDANT) WAS GOING TO "REVALIDATE"

21  HIM , GIVING PLAINTIFF FIVE SEPARATE C.D.C. "CONFIDENTIAL DISCLOSURE

22  FORMS " ( ATTACHED HERETO AS EXHIBITS 'FIVE' — 'NINE' ).

23      43.      AS EXHIBITED , FOUR OF THE FIVE "DISCLOSURE

24  FORMS " (EXHIBITS 'FIVE'-'EIGHT' ) SIMPLY REITERATE ( AS SECOND-

25      (F.N.) TO "DEBRIEF" IS TO ADMIT PRISON GANG AFFILIATION AND
   INFORM ON OTHERS , THEREBY BEING LABELED A "SNITCH", PLACING

26  THE INDIVIDUAL AND HIS FAMILY IN SEVERE DANGER OF RETALIATION OR
   DEATH". SEE; MADRID V. GOMEZ , 889 F. SUPP. 1146 , 1241 (N.D.CAL. 1975 );

27  KOCH V. LEWIS , 96 F. SUPP. 2d 949 , 966 (F.N. 26 ) (D. ARIZ. 2000 ) ; LIRA V.
   CATE ; 2009 U.S. DIST . LEXIS AT * 70 (F.N. 27 ) (N.D. CAL. 2009 ) ; AND

28  EXHIBIT ' FOUR ' ATTACHED HERETO AT ¶ S (d) , (e) & (f) (1) — (3) .

13 .

HAND/HEARSAY INFORMATION) THE SAME/SIMILAR ALLEGATIONS DESCRIBED IN EXHIBITS 'ONE — THREE' HERETO ( ¶ 39 SUPRA ), I.E., THAT PLAINTIFF ALLEGEDLY OWES A DEBT OR DEBTS ( THE AMOUNTS CHANGING WITH EACH INFORMANT ) TO AN UNIDENTIFIED GANG MEMBER FOR UNSPECIFIED REASONS AND WITHOUT ANY SPECIFIC DETAILS ( I.E. THE DATE OR DETAILS OF ANY TRANSACTIONS OR GANG ACTIVITY EXPLAINING OR TRIGGERING THE ALLEGED DEBT(S) ).

44.        THE FIFTH "DISCLOSURE" FORM (EXHIBIT 'NINE' , HERETO) ALLEGES THAT ON FEBRUARY 7, 2006, A PELICAN BAY STATE PRISON INFORMANT (DEBRIEFER) IN THE "PSYCHIATRIC SERVICES UNIT" (P.S.U.) TOLD A SERGEANT THAT ALLEGEDLY PLAINTIFF TOLD THE INFORMANT THAT HE WAS A "SHOT-CALLER" IN CONTACT WITH AN UNNAMED GANG MEMBER AT C.S.P. AND SENDING UNSPECIFIED MESSAGES AND "HIT LISTS" FROM AN UNNAMED GANG MEMBER IN THE P.S.U. TO UNNAMED "MAIN LINE" (GENERAL POPULATION) PRISONERS . ALTHOUGH THIS "DISCLOSURE" FORM HAS A CHECK – MARK BOX, PRE-PRINTED, STATING THAT "OTHER SOURCES INDEPENDENTLY PROVIDED THE SAME INFORMATION" AND IS "CORROBORATED THROUGH INVESTIGATION" , THE "DISCLOSURE" FORM FAILS TO DISCLOSE THE ALLEGED "OTHER SOURCES" OR THE "CORROBORATING INVESTIGATION" . MOREOVER, IT MUST BE NOTED THAT PSYCHIATRIC SERVICES UNIT INMATES ARE, WITHOUT EXCEPTION, KEPT ON VERY POWERFUL PSYCHOTROPIC DRUGS AND MORE IMPORTANTLY, PLAINTIFF WAS NOT AT PELICAN BAY IN 2006 . IN FACT, PLAINTIFF WAS CONFINED IN THE S.H.U. AT TEHACHAPI STATE PRISON FROM JULY OF 2005 TO JANUARY 2008 WHILE AWAITING TRANSFER TO C.S.P. S.H.U. .

45. NEVERTHELESS, ON OCTOBER 28, 2010, WHEN DEFENDANT ORTEGA GAVE PLAINTIFF THE ABOVE STATED "DISCLOSURE FORMS", DEFENDANT ORTEGA STATED TO PLAINTIFF THAT IF HE HAD "ANY COMMENTS", TO "JUST WRITE THEM DOWN ON THAT FORM" (GIVING PLAINTIFF A PRE-PRINTED FORM) AND STATING THAT HE WOULD BE BACK ON THE FIRST (OF NOVEMBER). PLAINTIFF THEN TOLD DEFENDANT ORTEGA THAT HE "WANTED TO HAVE A PERSONAL INTERVIEW WITH I.G.I. RUIZ" TO PRESENT HIS DEFENSE. DEFENDANT ORTEGA REPLIED: "O.K.: I'LL LET HIM KNOW" AND THEY LEFT.

46. ON NOVEMBER 1, 2010, DEFENDANT ORTEGA RETURNED TO PLAINTIFF'S CELL-DOOR AND ASKED FOR HIS "WRITTEN COMMENTS FORM" WHICH PLAINTIFF GAVE HIM BUT AGAIN STATED TO DEFENDANT ORTEGA THAT HE "PREFERRED AND WAS REQUESTING A PERSONAL INTERVIEW WITH I.G.I. RUIZ" AND "FURTHER, MORE SPECIFIC, INFORMATION REGARDING THE ALLEGATIONS IN THE DISCLOSURE FORMS (C.D.C. 1030 FORMS) INORDER TO ADEQUATELY PREPARE AND PRESENT A DEFENSE." DEFENDANT ORTEGA REPLIED, SAYING: "THIS WRITTEN RESPONSE IS YOUR INTERVIEW AND IS ALL YOU GOT COMING"... PLAINTIFF THEN ATTEMPTED TO SHOW DEFENDANT ORTEGA THE C.D.C. RULES WHICH REQUIRE A PERSONAL INTERVIEW, HOWEVER, DEFENDANT ORTEGA IGNORED PLAINTIFF AND WALKED OFF (SEE, EXHIBIT 'TEN' HERETO - DECLARATION OF STEVEN BELLA PEREZ).

47. DEFENDANT RUIZ, THEREAFTER, WITHOUT EVER INTERVIEWING PLAINTIFF AND WITHOUT PROVIDING THE MISSING INFORMATION PLAINTIFF REQUESTED, SUBMITTED A "GANG VALIDATION PACKAGE" REGARDING PLAINTIFF TO DEFENDANT MC CLURE FOR REVIEW AND APPROVAL.

48.      on November (2) 2010) Defendant Mc Clure Approved
the Package and Revalidated Plaintiff as an "associate" of the
"Mexican mafia" (see exhibit '11' attached hereto).

49.      It should be noted that Plaintiff was never
charged with c.d.c. rule violation of c.c.r., Title 15 §
3023 ("Gang activity") via a c.d.c. rules violation report
(c.d.c. form 115) for any of these Prison gang allegations
and has never been given an opportunity to challenge
their reliability.

50.      Plaintiff is informed and believes that the
sources of these allegations are unreliable and the
circumstances surrounding these allegations reveal their
unreliability. Plaintiff is informed and believes that the
information was provided by inmates whom debriefed after
their coercion originating from c.d.c. officials, to wit,
c.s.p. s.h.u. and P.B.S.P. I.c.c. and I.G.I. members whom
induced these prisoners by promises to release them from the
s.h.u. or P.S.U. and by threats of revealing them as "drop-outs"
(defectors). Plaintiff is informed and believes that there is no
independent corroboration to these allegations and theories.
Plaintiff is informed and believes these allegations are
hearsay and not indicative of currently active "gang activity"
as required by c.d.c. regulations (c.c.r. §3378 (c)(h),(c)& (g)).

51.      Plaintiff asserts that these validation "source
items" (allegations) are so vague and conclusory as to
preclude Plaintiff from effectively rebuting them. The "disclosure
forms do not provide Plaintiff with adequate information within
which to marshal the facts so as to have a meaningful

16.

1  OPPORTUNITY TO BE HEARD.

2  52.        IT COMPLETELY DEFIES LOGIC AND IS UNREASONABLE

3  TO BELIEVE THE DEFENDANTS' CLAIM THAT PLAINTIFF HAS BEEN ON THE

4  ONE HAND, CURRENTLY AND ACTIVELY INVOLVED AND PARTICIPATING IN

5  THE PRISON GANG'S ACTIVITIES, YET ON THE OTHER HAND CLAIM

6  (BY USE OF THE SAME "EVIDENCE") THAT HE IS IN "BAD STANDINGS"

7  WITH THE GANG AND EXCLUDED FROM THEIR ACTIVITIES (¶¶ 39; 43

8  SUPRA ).

9  53.        A PRISONER CONSIDERED TO BE "IN BAD STANDINGS"

10 AND "TAKEN OFF THE GANG'S PROGRAM" WOULD BE OUSTED ;

11 OSTRACIZED AND NOT ALLOWED OR "TRUSTED TO PARTICIPATE IN

12 [ETS] DAILY ACTIVITIES" (CF. EXHIBIT 'TWELVE' ATTACHED HERETO ).

13 54.        ITEMS 1-4 (EXHIBITS 'FIVE'- 'EIGHT') ARE NOT

14 INDICATIVE OR "CURRENT GANG ACTIVITY" PER C.D.C. REGULATIONS

15 (C.C.R. § 3378(c)) WHICH STATES THAT PLAINTIFF IS ELIGIBLE

16 FOR RELEASE FROM THE S.H.U. AS "INACTIVE" IF HE HAS NOT "BEEN

17 INVOLVED IN 'GANG ACTIVITY' FOR A MINIMUM OF 6-YEARS". Ibid.

18 ACCORDING TO C.C.R. II.G.II.:

19            "INMATES IN 'GOOD STANDINGS' ARE TRUSTED TO
            PARTICIPATE IN DAILY EME ACTIVITIES, SUCH
20           AS DAILY ROLL CALL, HOLDING AND PASSING HOT
            KITES OR DRUGS, MAKING, HOLDING AND PASSING
21           WEAPONS, COMMUNICATING WITH OTHER EME
            ASSOCIATES, PASSING MESSAGES AT VISITING, OR
22           COMMITING ASSAULTS FOR THE EME PRISON GANG."
            Ibid (EMPHASIS ADDED) AT EXHIBIT 'TWELVE'.

23 55.        MOREOVER, SOURCE ITEMS 1-4 (EXHIBITS '5'-'8')

24 DO NOT CLAIM PLAINTIFF IS IN "GOOD STANDINGS" WITH THE GANG AND

25 DO NOT CLAIM HE PARTICIPATED IN ANY SUCH "DAILY EME

26 ACTIVITIES". INSTEAD, THESE ITEMS CLAIM THE OPPOSITE; THAT

27 PLAINTIFF IS IN BAD STANDINGS WITH THE GANG AND TAKEN OFF/

28 EXCLUDED FROM ITS PROGRAM, AND IN FACT, HIS NAME WAS

NOT LISTED ON THE C.D.C. GROUP APPEAL REFERRED TO AS EXHIBIT

(TWELVE) WHICH C.S.P. I.G.I. ALLEGE WAS MEANT FOR ONLY THOSE

PRISONERS AS "GOOD STANDINGS".

56.     NEVERTHELESS, THE DEFENDANTS, POSSIBLY AWARE

OF THIS CONTRADICTIVE CLAIM, AND WITH NOTHING ELSE TO GO ON,

ATTEMPT TO ADD THE NEW CONJECTURE (WITHOUT SUPPORT)

THAT BECAUSE PLAINTIFF ALLEGEDLY OWES DRUGS TO AN ALLEGED

PRISON GANG MEMBER, THIS SOMEHOW "SHOWS HIS CONTINUED

SINCERITY AND ACTIVE 'ASSOCIATION' WITH THE SAME PRISON GANG"

(EXHIBIT 'FIVE' HERETO) (EMPHASIS ADDED). BUT CONTRADICTORILY,

C.S.P. I.G.I. HAVE INTERPRETED AND DEFINED C.C.R. §

3378 (C) AS ACTIVE GANG ASSOCIATION, SINCERE OR OTHERWISE,

"CAN NOT BE CONSTRUED AS INVOLVEMENT IN GANG ACTIVITY"

FOR PURPOSES OF CONSIDERATION OF INACTIVE STATUS (SEE

EXHIBITS 'THIRTEEN' & 'FOURTEEN' ATTACHED HERETO) (EMPHASIS

IN ORIGINALS).

57.     MOREOVER, DEFENDANTS HAVE FAILED TO

INVESTIGATE AND ESTABLISH WHETHER THE ALLEGED DEBTS

INCURRED (WERE TRIGGERED) WITHIN THE 6-YEAR TIME PERIOD

IN ORDER TO BE CONSTRUED AS "CURRENT" GANG ACTIVITY

UNDER C.C.R. § 3378 (C) AND BASED ON PLAINTIFF'S PERSONAL

INVOLVEMENT IN ACTUAL GANG ACTIVITY OR JUST SOMEONE

INVOLVING THE INFORMANT TO PERPETRATE A SHAM

EXTORTION SCHEME. EITHER OF WHICH WOULD NOT BE

INDICATIVE OF "CURRENT GANG ACTIVITY", BUT RATHER, IT

WOULD MAKE PLAINTIFF THE PIGEON OF A FRAUD AIDED BY

(OR PERPETRATED BY) THE GANG DEFECTOR / INFORMANT.

58.     BECAUSE PLAINTIFF WAS NEVER AFFORDED A

meaningful opportunity to meet and question the critical decision maker ( DEFENDANT RUIZ ) to discern these undisclosed answers inorder to effectively and adequately respond to such vague and clouded allegations which, as provided to plaintiff, were conclusory, incomplete and lacked sufficient detail. As such, plaintiff's revalidation and continued indefinite solitary S.H.U. confinement based on exhibits 'FIVE' - 'EIGHT' attached hereto, is clearly erroneous, unreliable, unreasonable, without proper due process and an arbitrary action.

59.       Source item no. FIVE ( EXHIBIT 'NINE' ) is also insufficient, unreliable, and fails to provide plaintiff with sufficient information with which to respond and allow him a meaningful opportunity to be heard. As outlined in ¶¶ 44 & 46 SUPRA, this "disclosure form" lacks the most basic information necessary to marshal the facts and prepare a response. Moreover, it fails to identify any evidence to support such an impossible allegation made by a psychiatric inmate.

60.       A bald, yet colorful, assertion by an unidentified inmate wanting out of the P.S.U. / S.H.U. without any corroborating proof, can not be considered reliable nor constitute " some evidence ". In this case, an unidentified " psychiatric services unit " ( P.S.U. ) inmate wanting out of the P.S.U. / S.H.U. made fantastical allegations against plaintiff ( which would have been impossible for plaintiff ) inorder for this inmate "informant" to gain his release and receive better

TREATMENT AND GREATER PRIVILEGES (E.G.) CONTACT VISITS, PHONE CALLS AND OTHER EXCEPTIONAL AMENITIES). HOWEVER, HIS STORY IS NOT SUPPORTED BY ANY FACTUAL EVIDENCE. THERE ARE NO ACTUAL INDIVIDUALS IDENTIFIED NOR ANY EVIDENCE THAT PLAINTIFF WROTE ANY ACTUAL "MESSAGES" OR "HIT-LISTS" AND RECEIVED BY AN ACTUAL PERSON. THESE CONCLUSORY STATEMENTS (E.G.) "SENDING MESSAGES TO 'THE MAIN LINE' " WITHOUT IDENTIFYING ACTUAL OR SPECIFIC PERSONS/INDIVIDUALS) ARE SIMPLY BALD ASSERTIONS, AND ALTHOUGH THIS "DISCLOSURE" FORM STATES (BY CHECKED BOXES PRE-PRINTED ON EVERY C.D.C. 1030 FORMS) THAT "MOR  THAN ONE SOURCE INDEPENDENTLY PROVIDED THE SAME INFORMATION" AND "PART OF THE INFORMATION IS CORROBORATED THROUGH INVESTIGATION"), SUCH "OTHER SOURCES" AND "CORROBORATED INVESTIGATION" ARE NOT DISCLOSED NOR IDENTIFIED AND IS SIMPLY SUPERFICIAL BOILER PLATE RUBBER STAMPING.

61.    MOREOVER, PLAINTIFF WAS NOT AT P.B.S.P. AT THE TIME MENTIONED IN THE DISCLOSURE FORM (SEE $\underline{\text{II}}$ 44 SUPRA). WHEREFORE, FOR THESE REASONS, THIS CONFIDENTIAL INFORMATION CAN NOT BE CONSTRUED AS RELIABLE NOR CONSTITUTE "SOME EVIDENCE", AND BECAUSE PLAINTIFF WAS DENIED A PERSONAL MEETING WITH DEFENDANT RUIZ INORDER TO DISCUSS THIS, ITEM FIVE USED TO REVALIDATE PLAINTIFF AND KEEP HIM CONFINED IN THE S.H.U. FOR ANOTHER 6-YEARS OF SOLITUDE AND ISOLATION, WAS CLEARLY ERRONEOUS, UNREASONABLE, WITHOUT PROPER DUE PROCESS AND THEREFORE, AN ARBITRARY ACTION BY DEFENDANTS.

62.    CONTRARY TO SUCH ALLEGATIONS THAT PLAINTIFF

20.

IS INVOLVED IN CRIMINAL GANG ACTIVITY.) IT IS IMPORTANT
TO NOTE THAT THE ENTIRE TIME PLAINTIFF HAS BEEN AT C.S.P.
(SINCE 2008) HE HAS NOT RECEIVED A SINGLE DISCIPLINARY
RULES VIOLATION REPORT AND HAS BEEN ACTIVELY INVOLVED
IN EDUCATIONAL COURSES, RECEIVING HIGH MARKS AND
PRAISES FROM THE COLLEGES AND C.S.P. EDUCATION
OFFICIALS, MAINTAINING A 4.0 G.P.A.  .

## B.                    PERIODIC REVIEWS

FACTS PERTAINING TO THE "PERIODIC REVIEWS" OF
PLAINTIFF'S INDEFINITE SOLITARY S.H.U. CONFINEMENT.

63.          ONCE A PRISONER IS VALIDATED OR REVALIDATED
BY THE O.C.S. AND SENT TO OR RETAINED IN THE S.H.U. FOR AN
"INDETERMINATE" TERM, HE IS ENTITLED TO "PERIODIC REVIEWS"
OF HIS VALIDATION (GANG STATUS). PURSUANT TO CALIFORNIA
REGULATIONS, A PRISON'S "INSTITUTIONAL CLASSIFICATION
COMMITTEE" (I.C.C.) MUST REVIEW THE PRISONER'S STATUS
EVERY 180-DAYS, ALLEGEDLY SO THEY CAN CONSIDER
RELEASING THE PRISONER TO THE GENERAL POPULATION (C.C.R.
§ 3341.5 (c)(2)(A)(1) ).

64.          IN REALITY, "CLASSIFICATION REVIEWS" BY THE
I.C.C. DO NOT SUBSTANTIVELY REVIEW THE PRISONER'S CASE
FOR POSSIBLE RELEASE, BUT INSTEAD, THESE "REVIEWS"
INVOLVE JUST THREE STEPS: FIRST, THE PRISONER IS URGED TO
DEBRIEF; SECOND, A MENTAL HEALTH MEMBER ASKS THE
PRISONER TWO QUESTIONS: (1) DO YOU FEEL SUICIDAL; (2) DO
YOU WANT TO HURT YOURSELF OR OTHERS (THIS MENTAL HEALTH

1  "EVALUATION") ) LIKE MOST OTHERS IN THE C.S.P. S.H.U.) OCCURS

2  IN FRONT OF ALL MEMBERS OF THE COMMITTEE ) INCLUDING THE

3  I.G.I. AND HOUSING UNIT GUARDS' ) AND THIRD ) THE PRISONER

4  IS ASKED IF HE HAS ANY "SAFETY CONCERNS". THESE I.C.C.

5  "REVIEWS" LAST NO MORE THAN 8-MINUTES.

6      65.        UNLESS A PRISONER IS WILLING TO DEBRIEF ,

7  THE 180-DAY I.C.C. REVIEW ALLOWS ABSOLUTELY NO POSSIBILITY

8  OF RELEASE FROM THE S.H.U. .

9      66.        PLAINTIFF CAN NOT SUCCESSFULLY DEBRIEF BECAUSE

10  HE IS NOT A GANG MEMBER AND HAS NO GANG INFORMATION TO

11  DIVULGE . ACCORDING TO DEFENDANTS ) PLAINTIFF HAS NOT BEEN

12  PART OF THE GANG'S "PROGRAM" FOR THE PAST 6-YEARS AND

13  THEREFORE ) WOULD NOT HAVE ANY KNOWLEDGE OF SUCH .

14  WHEREFORE ) PLAINTIFF REFUSES TO MANUFACTURE OR FABRICATE

15  INFORMATION AGAINST OTHER PRISONERS INORDER TO OBTAIN

16  HIS OWN RELEASE FROM THE S.H.U. AND FALSELY KEEP OTHERS

17  IN IT . MOREOVER ) IN DOING SO ) PLAINTIFF WOULD BE LABELED

18  A "SNITCH" ) THEREBY PLACING HIS LIFE AS WELL AS HIS FAMILIES'

19  LIVES IN SEVERE DANGER .

20      67.        NO EXAMINATION OF CONTINUED GANG ACTIVITY

21  OCCURS AT THE 180-DAY I.C.C. "REVIEWS" NOR IS THERE ANY

22  ASSESSMENT OF WHETHER THE PRISONERS' BEHAVIOR REQUIRES

23  CONTINUED S.H.U. CONFINEMENT . FOR THIS REASON , AND THOSE

24  STATED ABOVE ) SUCH REVIEWS ARE MEANINGLESS AND FEW

25  PRISONERS ATTEND THEM .

26      68.        THE ONLY REVIEW AT WHICH THE I.C.C. EVEN

27  PURPORTS TO DETERMINE WHETHER THE PRISONER SHOULD BE

28  RELEASED FROM THE S.H.U. OCCURS JUST ONCE EVERY 6-YEARS

22.

(SEE, C.C.R. § 3378(e)). THEREFORE, ALL GANG VALIDATED PRISONERS MUST REMAIN IN THE S.H.U. FOR 6-YEARS WITHOUT EVEN THE POSSIBILITY OF ANY PERIODIC REVIEW TO OBTAIN THEIR RELEASE. THIS 6-YEAR INTERVAL IS FAR LONGER THAN ANY EQUIVALENT REVIEW AT OTHER SUPERMAX OR HIGH SECURITY SYSTEMS IN OTHER STATES, THE FEDERAL PRISON SYSTEM, OR OTHER NATIONS AND IS FAR LONGER THAN THE 120-DAY PERIOD THAT THE NINTH CIRCUIT DEEMED CONSTITUTIONALLY PERMISSIBLE FOR SUCH SEGREGATED / SOLITARY S.H.U. CONFINEMENT IN *TOUSSAINT V. MC CARTHY*, 926 F.2d. 800 (9TH. CIR. 1990).

69.     UNDER DEFENDANTS APPLICATION OF C.C.R. § 3378 (e), THE 6-YEAR REVIEWS ARE SUPPOSED TO DETERMINE WHETHER THE PRISONER IS "ACTIVE" WITH THE GANG OR HAS ASSUMED "INACTIVE STATUS". UNDER C.C.R. § 3378 (c), "WHEN THE INMATE HAS NOT BEEN IDENTIFIED AS BEING INVOLVED IN GANG ACTIVITY FOR A MINIMUM OF 6-YEARS", HE CAN ACHIEVE "INACTIVE STATUS" AND MAY BE RELEASED FROM THE S.H.U. .

70.     ACCORDING TO C.S.P. I.G.I., ONE WHO ACHIEVES "INACTIVE" STATUS IS STILL A GANG MEMBER OR ASSOCIATE, BUT NOT AN "ACTIVE" ONE, IN THAT HE DOES NOT ENGAGE IN ANY GANG ACTIVITIES (SEE, E.G., EXHIBITS '13' & '14' HERETO). BUT AGAIN, THIS REVIEW OF THE PRISONER'S GANG STATUS TAKES PLACE ONLY ONCE, EVERY 6-YEARS, THEREFORE MAKING PLAINTIFF'S BELOW DESCRIBED 180-DAY AND "ANNUAL" S.H.U. "REVIEWS" MEANINGLESS GESTURES.

71.     AS STATED PREVIOUSLY, O.C.S. DEFENDANT

1   HE CLUES "REVALIDATED" PLAINTIFF ON NOVEMBER 12, 2010.

2   ON DECEMBER 16, 2010, DEFENDANTS GIPSON, SOLIMAN AND

3   BEER REVIEWED PLAINTIFF'S S.H.U. CONFINEMENT AND

4   PRIMARILY FOCUSED ON PLAINTIFF'S MENTAL HEALTH AND

5   ORDERED THAT BECAUSE "THE MOST RECENT GANG ACTIVITY DOCUMENTED

6   ON 11/12/10 IS NOT MORE THAN 6-YEARS OLD, THE CASE WAS NOT REFERRED TO

7   THE I.G.I. FOR A REVIEW AND UPDATE OF HIS GANG STATUS". PLAINTIFF

8   MADE THESE DEFENDANTS (I.C.C. MEMBERS) AWARE THAT THE

9   REVALIDATION "EVIDENCE" WAS UNTRUE, UNRELIABLE AND THAT

10  HE NEVER HAD AN OPPORTUNITY TO SPEAK WITH DEFENDANT

11  RUIZ TO EXPLAIN THESE FACTS, WHICH IT THEN WAS

12  EXPLAINED TO PLAINTIFF THAT THE ONLY WAY PLAINTIFF COULD

13  BE RELEASED FROM THE S.H.U. NOW WAS IF HE DEBRIEFED.

14  AND BECAUSE PLAINTIFF WOULD NOT DEBRIEF FOR THE REASONS

15  STATED AT ¶¶ 41 (F.N. 1) & 66 SUPRA , THESE I.C.C.

16  DEFENDANTS ORDERED PLAINTIFF'S SOLITARY S.H.U. CONFINEMENT

17  TO CONTINUE INDEFINITELY .

18      72.      ON SEPTEMBER 22, 2011, PLAINTIFF RECEIVED

19  HIS NEXT I.C.C. "REVIEW" CONDUCTED BY DEFENDANTS CASTRO

20  PIÑA, BEER AND SOLIMAN . THIS "REVIEW" WAS 277 DAYS SINCE

21  THE LAST ONE HELD ON DECEMBER 16, 2010 (Ibid). THIS "REVIEW"

22  WAS NO DIFFERENT AND USING THE EXACT SAME BOILER PLATE

23  TEXT AND LANGUAGE, DEFENDANTS RUBBER STAMPED PLAINTIFF'S

24  CONTINUED SOLITARY INDEFINITE S.H.U. CONFINEMENT (SEE THE

25  HIGHLIGHTED PORTION OF EXHIBIT ( FIFTEEN ) ATTACHED HERETO).

26      73.      ON MARCH 29, 2012, DEFENDANTS GIPSON AND

27  SOLIMAN CONDUCTED PLAINTIFF'S NEXT SCHEDULED I.C.C.

28  S.H.U. REVIEW AND AGAIN RUBBER STAMPED PLAINTIFF'S

                              24 .

1  INDEFINITE SOLITARY S.H.U. CONFINEMENT USING THE EXACT

2  SAME BOILER PLATE TEXT AS ¶ 71 SUPRA (GANG VALIDATION

3  OF NOV. 12, 2010, "NOT MORE THAN 6-YEARS OLD") — SEE

4  HIGHLIGHTED PORTION OF EXHIBIT 'SIXTEEN' ATTACHED HERETO.

5      74.     ON SEPTEMBER 20, 2012, DEFENDANTS CASTRO,

6  PINA AND BEER CONDUCTED PLAINTIFF'S NEXT SCHEDULED I.C.C.

7  S.H.U. REVIEW AND AGAIN RUBBER STAMPED PLAINTIFF'S

8  INDEFINITE SOLITARY S.H.U. CONFINEMENT USING SAME EXACT

9  BOILER PLATE TEXT AS EXHIBITS '15' & '16' HERETO (SEE

10  EXHIBIT '17' HERETO) STATING VALIDATION "NOT MORE THAN 6-

11  YEARS OLD". Id.   AGAIN, PLAINTIFF PROTESTED AND WAS

12  TOLD BY DEFENDANTS THAT THE ONLY WAY THEY WOULD

13  NOW CONSIDER HIS RELEASE FROM THE S.H.U. WAS IF HE

14  WOULD DEBRIEF.

15      75.     ON APRIL 25, 2013, DEFENDANTS GIPSON AND

16  PINA CONDUCTED PLAINTIFF'S NEXT I.C.C. SCHEDULED REVIEW

17  WHICH WAS OVER 210 DAYS SINCE PLAINTIFF'S LAST REVIEW

18  (SUPRA) AND AGAIN WHEN PLAINTIFF ATTEMPTED TO PRESENT

19  HIS VIEWS AND CERTIFICATES OF ACHIEVEMENT FOR THESE

20  DEFENDANTS TO CONSIDER FOR HIS RELEASE FROM THE

21  S.H.U., DEFENDANTS GIPSON AND PINA TOLD PLAINTIFF

22  THAT NONE OF IT MATTERED AND THEY WOULD NOT

23  REVIEW HIS GANG STATUS OR POSSIBLE S.H.U. RELEASE

24  UNTILL 2015 UNLESS PLAINTIFF AGREED TO DEBRIEF.

25      76.     AS SUCH, SAID "REVIEWS" DENY PLAINTIFF DUE

26  PROCESS AND ARE NOTHING MORE THAN MEANINGLESS

27  GESTURES.

28  //

CORCORAN STATE PRISON S.H.U.

CONDITIONS OF PLAINTIFFS CONFINEMENT

77.     PLAINTIFF HAS BEEN CONTINUOUSLY HELD IN SOLITARY AND SEGREGATED CONFINEMENT WITHIN THE C.S.P. S.H.U. SINCE JANUARY OF 2008, AND AT ALL TIMES MENTIONED HEREIN, HE HAS BEEN HOUSED IN UNIT 4B-4L.

78.     FOR A PRISONER AT C.S.P. S.H.U, THE CONSEQUENCES OF ASSIGNMENT TO SUCH CONFINEMENT ARE HARSH. PLAINTIFF IS SUBSTANTIALLY DEPRIVED OF HUMAN CONTACT AND HUMAN INTERACTION. THE ONLY AVENUE OF COMMUNICATION WITH ANOTHER PRISONER IS BY SPEAKING LOUDLY ENOUGH FOR THE PRISONER IN THE NEXT CELL, OR A CELL DOWN THE TIER, TO HEAR. GUARDS, HOWEVER, HAVE THE DISCRETION TO ISSUE WARNINGS AND PUNISH ANY LOUD COMMUNICATIONS AS A RULE VIOLATION, AND DO SO. MOREOVER, ANY COMMUNICATION WITH ANOTHER VALIDATED PRISONER, EVEN JUST A GREETING, MAY BE, AND HAS BEEN USED BY C.D.C. AS "EVIDENCE" (SOURCE ITEM - VALIDATION POINTS) TO RETAIN THEM IN THE S.H.U. INDEFINITELY FOR "GANG ASSOCIATION / ACTIVITY". ALL PRISONERS IN PLAINTIFF'S HOUSING UNIT (4B-4L) ARE VALIDATED BY C.D.C. AS PRISON GANG ASSOCIATES, WITH THE ALLEGED MEMBERS AND "MOST DANGEROUS" BEING KEPT IN 4B-1L.

79.     PLAINTIFF SPENDS DAYS AND NIGHTS WITHOUT RESPITE IN A CUBICLE / CELL THE SIZE OF A DOG KENNEL IN WHICH HE EATS, SLEEPS AND WASHES. PLAINTIFF'S CELL IS ALL CONCRETE EXCEPT FOR A STAINLESS STEEL SINK / TOILET. HIS CELL RESEMBLES A VERY SMALL CONCRETE CAVE AND IS EXTREMELY

COLD IN THE WINTER AND VERY HOT IN THE SUMMER. THE
VENTILATION IS POOR AND THE CELL AIR VENTS HAVE NOT BEEN
CLEANED IN OVER A DECADE AND ARE FILTHY WITH DUST AND DEBRI.

80.        "EXERCISE" OCCURS IN A FENCED IN CAGE ALSO
ABOUT THE SIZE OF A DOG KENNEL CAGE. SAID CAGES ARE
DIRTY AND THEIR SINKS / TOILETS ARE NOT DISINFECTED WHEREIN
DEFENDANTS SUBJECT PLAINTIFF AND OTHER S.H.U. PRISONERS TO
VERY DEGRADING AND HUMILIATING NUDE "STRIP" SEARCHES IN
COLD RAIN AND IN FRONT OF OTHER PRISONER'S AND FEMALE
EMPLOYEES ( SEE EXHIBIT 'EIGHTEEN' : DECLARATION OF EVERETT
G. GONZALEZ AT ¶¶ 6&17, ATTACHED HERETO). MOREOVER, PLAINTIFF
DOES NOT RECEIVE OUT-DOOR EXERCISE ON A REGULAR BASIS
DUE TO CONSTANT AND ROUTINE "CANCELLINGS" DUE TO ALLEGED
("GUARDS' MEETINGS"; "SHORTAGE OF GUARDS" ( Id. AT ¶ 18) AND
THE LATEST ONE "STAFF APPRECIATION DAY" ( MAY 24, 2012 ).

81.        PLAINTIFF'S COMMUNICATION WITH LOVED ONES
OUTSIDE IS ALSO SUBJECT TO SEVERE RESTRICTIONS. PRISONERS
IN THE C.S.P. S.H.U. ARE PROHIBITED FROM ANY PHONE CALLS
ABSENT A DEATH OF AN IMMEDIATE FAMILY MEMBER OR AN
ORDER BY THE COURT. PLAINTIFF IS UNAWARE OF ANY OTHER
STATE, FEDERAL OR LOCAL CORRECTIONAL SYSTEM THAT
COMPLETELY FORBIDS ALL NON-EMERGENCY / NON-COURT
ORDERED PHONE CALLS ( THE FEDERAL BUREAU OF PRISONS
ALLOWS ITS HIGHEST SECURITY RISK S.H.U. PRISONERS AT
LEAST ONE SOCIAL PHONE CALL PER MONTH ; SEE ) ; E.G., U.S.V. BOUT,
860 F.SUPP. 2d. 303, 306 AND 306-307 ( S.D. N.Y. 2012 ) ).

82.        VISITS WITH FAMILY OR FRIENDS IN THE C.S.P. S.H.U.
ARE EXTREMELY DIFFICULT TO SCHEDULE AND ARE LIMITED TO ONLY

ONE HOUR ON WEEKENDS WITH NO PHYSICAL CONTACT. VISITS OCCUR

BEHIND A GLASS WINDOW IN A SMALL BOOTH THROUGH A TELEPHONE

WHICH IS RECORDED AND MONITORED, INCLUDING A VIDEO CAMERA,

BY THE I.G.I. AND OTHER PRISON GUARDS.

83.      PRISONERS IN THE C.S.P. S.H.U. WHO ARE

VALIDATED ARE CONSIDERED BY C.O.S. TO BE "SEGREGATED"

FOR "ADMINISTRATIVE" REASONS AND NOT FOR "DISCIPLINARY"

PURPOSES YET ARE DENIED VOCATIONAL AND WORK PROGRAMS

AND NOT ALLOWED TO PARTICIPATE IN ANY GROUP

REHABILITATION OR PRE-RELEASE PREPARATION PROGRAMS.

### FACTS PERTAINING TO EIGHTH AMENDMENT CLAIMS:

#### (a.) UNSANITARY FOOD PREPARATION AND SERVICE

84.      AS STATED PREVIOUSLY, ALL S.H.U. PRISONERS,

INCLUDING PLAINTIFF, MUST EAT ALL OF THEIR MEALS IN THEIR CELLS.

THE MEALS ARE FIRST COOKED AND PREPARED IN THE C.S.P. "LEVEL

FOUR KITCHEN", PLACED INTO 16-SEPARATE CARTS (ONE CART

FOR EACH OF THE 16-C.S.P. S.H.U. HOUSING UNITS). THESE 16

CARTS ARE THEN PLACED ON THE BACK LOADING DOCK OF THE

LEVEL FOUR MAIN KITCHEN AWAITING PICKUP BY A TRUCK WHICH

THEN TAKES AND DROPS OFF EACH CART - ONE AT A TIME - AT

EACH OF THE 16 S.H.U. HOUSING UNITS, LEAVING THEM OUTSIDE -

IN FRONT OF EACH BUILDING.

85.      THESE BUILDING FOOD CARTS ARE LEFT OUTSIDE OF

THE BUILDING, OUT IN THE OPEN AND UNATTENDED UNTIL THE

HOUSING UNIT PRISON GUARDS GO OUTSIDE AND RETRIEVE THEM.

THIS IS DETERMINED BY WHETHER THESE GUARDS, TO WIT,

28.

1. DEFENDANTS CASILLAS, RAMIREZ, HAYSE, LERMA AND NAVARRO,
2. ARE PREOCCUPIED WITH "CONDUCTING "SECURITY" OR "HOUSING
3. UNIT - DUTIES" (BASED WHOLLY ON THEIR DISCRETION AND
4. PREFERENCE), SUCH AS CONDUCTING CELL-SEARCHES, ESCORTS
5. OF PRISONERS TO AND FROM THE UNIT SHOWERS AND STAFF
6. ROUNDS OR VISITS. AS SUCH, THE FOOD CART FOR PLAINTIFF'S
7. HOUSING UNIT WILL SIT OUTSIDE FOR UP TO 40 MINUTES.
8.     86.      ONCE THESE DEFENDANTS DECIDE TO RETRIEVE
9. THE FOOD CART FROM OUTSIDE, THEY THEN, IF NOT BUSY, PLACE THE
10. FOOD INTO A "HOT CART" TO "KEEP THE FOOD WARM". THESE
11. DEFENDANTS (CASILLAS, RAMIREZ, HAYSE, LERMA, NAVARRO, INCLUDING
12. AT TIMES, MOSS AND GRAY) THEN STACK THE APPROX. 100 PAPER OR
13. PLASTIC TRAYS ON TO A DIRTY-UNSANITIZED WORK BENCH
14. THERE IN THE HOUSING UNITS HOLDING CAGE ROTUNDA NEXT TO
15. THE "HOT CART" AND THEN BEGIN TO PREPARE INDIVIDUAL
16. FOOD TRAYS (ONE FOR EACH OF THE APPROX. 100 PRISONERS
17. CONFINED IN PLAINTIFF'S S.H.U. HOUSING UNIT - 4B/4L), THEN
18. THESE DEFENDANTS STACK THE PREPARED FOOD TRAYS ON TO
19. DIRTY-UNSANITIZED "PUSH-CARTS". THESE PUSH-CARTS DO NOT
20. HAVE A COVERING AND ARE ALSO USED BEFOREHAND TO CARRY
21. DIRTY HANDCUFFS, WAIST CHAINS, SHOWER CLEANING BUCKETS
22. AND RAZORS, DIRTY LAUNDRY AND TRASH. THE FOOD TRAYS
23. ARE THEN LEFT ON THE PUSH CART, UNCOVERED, IN FRONT OF
24. THE A-SECTION, AND OPENED OUTSIDE DOORS, FOR UP TO AN
25. HOUR WHILE THESE DEFENDANTS PREPARE ANOTHER PUSH CART
26. (UNSANITIZED) WITH ANOTHER APPROX. 50 TRAYS FOR THE NEXT
27. TIER OF PRISONERS. AS A RESULT OF THIS, THE FOOD, WHEN
28. FINALLY RECEIVED, IS ALWAYS COLD, (MEATS, EGGS, ETC...)

1  AT UNSAFE TEMPERATURES AND CONTAMINATED BY FLIES, DUST

2  AND MOSQUITOES.

3      87.          THIS UNSAFE AND UNSANITARY PRACTICE

4  IS FURTHER COMPOUNDED BY THE FACT THAT DEFENDANTS CASILLAS,

5  RAMIREZ, HAYSE, LERMA AND NAVARRO WILL ALSO STOP PREPARING AND

6  SERVING FOOD TRAYS (LEAVING THEM UNCOVERED) WHILE THEY

7  ESCORT MEDICAL STAFF, AND ESCORT DIABETIC PRISONERS

8  FROM THEIR CELLS TO SEE NURSE FOR INSULIN SHOTS AND

9  BACK AND ESCORT PRISONERS FROM SHOWERS TO THEIR CELL.

10      88.          AND BECAUSE ALL S.H.U. PRISONER ESCORTS

11  ARE "HANDS-ON" (GUARDS HOLD PRISONERS' ARM WHILE HE IS

12  IN RESTRAINTS), AFTER THESE DEFENDANTS (CASILLAS, RAMIREZ,

13  HAYSE, LERMA AND NAVARRO) ESCORT SAID PRISONERS (HAVING

14  CONTACT WITH THEIR SKIN) THESE DEFENDANTS RETURN TO

15  PREPARING AND SERVING THE FOOD TRAYS WITH THE VERY SAME

16  GLOVES ON WHICH THEY WORE TO TOUCH (ESCORT) THE PRISONERS

17  MENTIONED ABOVE AND AFTER HANDELING DIRTY LOCKS, USED/

18  CONTAMINATED RAZOR'S (SHAVERS) AND SHOWER CLEANING

19  BUCKETS.

20      89.          MOREOVER, DEFENDANTS CASILLAS, RAMIREZ,

21  HAYSE, LERMA, NAVARRO, MOSS AND GRAY DO NOT WEAR ANY HAIR-

22  NETS, KITCHEN CAPS, CLEAN WHITE SMOCKS OR APRONS

23  WHILE HANDELING, PREPARING OR SERVING THE FOOD.

24      90.          NONE OF THESE DEFENDANTS ARE CERTIFIED

25  OR TRAINED REGULARLY IN FOOD SAFETY, HANDELING AND SERVICE—

26  THEY ARE PRISON SECURITY GUARDS AND VOCATIONAL NURSES,

27  NOT CULINARY STAFF.

28      91.          MOREOVER, THERE IS NO DIRECT SUPERVISION

1  OF THESE DEFENDANTS' DAILY FOOD PREPARATION AND SERVICE, NOR

2  ANY WEEKLY INSPECTIONS BY DEFENDANTS BEER, HANSEN,

3  FUENTES, UHLIK, CASTRO OR GIPSON.

4      92.           AS SUCH, PLAINTIFFS' FOOD IS CONSISTENTLY

5  COLD, WATERY, WITH VERY SMALL PORTIONS AND MISSING ITEMS.

6      93.           DEFENDANTS (AS WELL AS C.S.P.) HAVE A

7  CUSTOM, POLICY, AND WELL DOCUMENTED HISTORY OF

8  MAINTAINING A "CODE OF SILENCE", AN UNWRITTEN BUT WIDELY

9  UNDERSTOOD CODE DESIGNED TO ENCOURAGE PRISON EMPLOYEES

10  TO REMAIN SILENT REGARDING THE IMPROPER BEHAVIOR OF THEIR

11  FELLOW EMPLOYEES. AS A RESULT OF THEIR FAILURE TO TRAIN

12  SUBORDINATES AND THEIR ACTIVE OPPOSITION TO INVESTIGATIONS

13  OF WRONGDOING BY GUARDS AND OTHER STAFF, SUPERVISORY

14  DEFENDANTS GIPSON, CASTRO, BEER, HANSEN, FUENTES, AND UHLIK,

15  HAVE RATIFIED AND PERPETUATED THIS PRACTICE AND CONDUCT.

16      94.           THESE FACTS ARE FURTHER SUPPORTED AND

17  CONSISTENTLY WITNESSED BY PLAINTIFF AND FELLOW PRISONERS

18  CONFINED IN HIS HOUSING UNIT (SEE EXHIBITS '18' — '29'

19  ATTACHED HERETO / DECLARATIONS OF E.GONZALEZ; J.FALCON;

20  L.CRUZ; G.GARCIA; R.CONCHAS; C.CONTRERAS; S.WILLIAMS;

21  M.THOMAS; T.BALTIERRA; R.DOMINGUEZ; A.HARRIS; AND

22  V.AGUILAR).

23      95.           THESE DEFENDANTS ACTIONS AND FAILURES

24  TO ACT, AS STATED ABOVE, HAVE CAUSED AND CONTINUE TO

25  CAUSE, A "SERIOUS RISK TO PLAINTIFFS' HEALTH" AND IS

26  THEREFORE A VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE EIGHTH

27  AMENDMENT TO THE UNITED STATES CONSTITUTION (HELLING V.

28  MC KINNEY, 509 U.S. 25, 36 (1993)).

(b.) FAILURE TO PROVIDE ADEQUATE CLEANING
SUPPLIES FOR SANITARY LIVING QUARTERS.

96.              AS STATED IN ¶ 79 SUPRA) PLAINTIFF IS
KEPT CONFINED TO HIS CELL 24 HOURS A DAY WHERE HE MUST EAT,
SLEEP AND BATHE IN.

97.              FOR THE PAST TWO YEARS, DEFENDANTS LERNA;
HAYSE; NAVARRO; CASTRO; AND GIPSON HAVE CONTINUALLY FAILED TO
PROVIDE PLAINTIFF WITH ADEQUATE CLEANING SUPPLIES AND TOOLS
NECESSARY TO MAINTAIN SANITARY AND SAFE LIVING QUARTERS.

98.              C.D.C. POLICY REQUIRES DEFENDANTS TO
PROVIDE ITS PRISONERS "THE MEANS FOR ALL INMATES TO KEEP
THEMSELVES AND THEIR LIVING QUARTERS CLEAN AND TO PRACTICE
GOOD HEALTH HABITS." (C.C.R., TITLE 15 § 3060).

99.              HOWEVER, AS STATED ABOVE AT ¶ 97 SUPRA,
AND AS SUPPORTED BY EXHIBITS 'EIGHTEEN' — 'TWENTY SEVEN' AND
EXHIBITS 'THIRTY' - 'THIRTY SIX' (DECLARATIONS OF J. PALOS;
R. CONCHAS; R. GARCIA; D. GUZMAN; E. ROBLES; V. AGUILAR AND
A. HARRIS) ATTACHED HERETO, DEFENDANTS HAVE ROUTINELY
DENIED PLAINTIFF THE MOST BASIC MEANS, SUCH AS SOAP,
DISINFECTANT, A MOP, BROOM OR EVEN AN EXTRA TOWEL
WITH WHICH TO PROPERLY CLEAN HIS CELL AND DISINFECT HIS
SINK AND TOILET DAILY INORDER TO MAINTAIN SANITARY
AND HEALTHY LIVING CONDITIONS.

100.              NO PRISON GUARDS, STAFF, MAINTENANCE
OR INMATE WORKERS CLEAN ANY OF THE S.H.U. CELLS ON A
DAILY, WEEKLY, MONTHLY, OR YEARLY BASIS. INSTEAD,
PLAINTIFF, AS ALL S.H.U. PRISONERS ARE REQUIRED, MUST

KEEP [HIS] QUARTERS AND SURROUNDING NEAT, CLEAN AND SANITARY " (C.C.R., TITLE 15 § 3064).

101.      IN JULY OF 2011, OVER 6,000 C.D.C. PRISONERS ENGAGED IN A STATE WIDE HUNGER STRIKE IN PROTEST OF THE LIVING CONDITIONS AND LONG TERM ISOLATION IN THE SECURITY HOUSING UNITS, SPARKING MUCH MEDIA AND PUBLIC ATTENTION, LEADING TO A STATE ASSEMBLY HEARING BY STATE SENATOR TOM AMMIANO (SEE EXHIBIT 'THIRTY SEVEN' ATTACHED HERETO - AVAILABLE @ HTTP://SOLITARYWATCH.COM/2011/08/24/HISTORIC-CALIFORNIA-ASSEMBLY-HEARING-ON-SOLITARY-CONFINEMENT).

102.      AS A RESULT, DEFENDANTS GIPSON AND CASTRO AGREED TO CONDUCT MONTHLY MEETINGS WITH C.S.P. 4B S.H.U. PRISONER "REPRESENTATIVES" TO ADDRESS THE PARTICULAR HUNGER STRIKE ISSUES REGARDING THE LIVING CONDITIONS AND PROGRAM PROBLEMS IN THE 4B C.S.P. S.H.U. (SEE EXHIBIT 'THIRTY EIGHT' ATTACHED HERETO — FIRST "CAPTAIN'S MONTHLY MEETING OF JULY 26, 2011).

103      AT THE SECOND "CAPTAIN'S MEETING" OF AUGUST 31, 2011, THE ISSUE HEREIN, REGARDING THE INABILITY OF 4B S.H.U. PRISONERS TO HAVE ACCESS TO CLEANING SUPPLIES INORDER TO CLEAN THEIR CELLS, WAS BROUGHT TO THE ATTENTION OF DEFENDANT CASTRO AND DOCUMENTED (SEE EXHIBIT 'THIRTY NINE' HERETO AT PAGE 3).

104.      THIS ISSUE WAS NEVER REMEDIED AND ON OCTOBER 31, 2011, PLAINTIFF PERSONALLY WROTE TO BOTH DEFENDANTS CASTRO AND GIPSON REGARDING THE LACK OF CELL CLEANING SUPPLIES, INTER ALIA, IN ANTICIPATION FOR THE NEXT "CAPTAIN'S MEETING" (SEE EXHIBIT 'FORTY' ATTACHED

33.

1  HERETO AT PAGE FOUR ).

2  105.                ON DECEMBER 27, 2011, THIS ISSUE WAS

3  AGAIN RAISED TO DEFENDANTS GIPSON AND CASTRO

4  (ATTENDEES) AT THE "CAPTAINS MEETING" (SEE EXHIBIT 'FORTY-

5  ONE' ATTACHED HERETO ).

6  106.                ON APRIL 11, 2012, DEFENDANTS WERE AGAIN

7  MADE AWARE THAT PLAINTIFF AND FELLOW 4B-4L PRISONERS

8  WERE STILL NOT RECEIVING CLEANING DISINFECTANT ( SEE

9  EXHIBIT 'FORTY TWO' ATTACHED HERETO AT PAGE 2 ).

10  107.                DESPITE THESE NUMEROUS AND EXPLICIT

11  NOTICES GIVEN TO THESE DEFENDANTS AND DESPITE THEIR

12  PROMISES, PLAINTIFF AND HIS FELLOW 4B-4L S.H.U.

13  PRISONERS HAVE BEEN CONTINUALLY, AND TO THIS DATE,

14  DENIED ADEQUATE CLEANING SUPPLIES AND DISINFECTANT

15  WITH WHICH TO PROPERLY CLEAN AND SANITIZE THEIR CELLS,

16  SINKS AND TOILETS ON A DAILY BASIS.

17  108.                AS SUCH, DEFENDANTS GIPSON, CASTRO,

18  LERMA, HAYSE AND NAVARRO HAVE, AND CONTINUE TO,

19  VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHT UNDER THE

20  EIGHTH AMENDMENT BY PLACING PLAINTIFF'S HEALTH AT

21  SERIOUS RISK ( *HELLING V. MCKINNEY*, 509 U.S. 25, 36 (1993)) SEE,

22  ALSO E.G., *COCKCROFT V. KIRKLAND*, 548 F. SUPP. 2d. 767, 777 (N.D.

23  CAL. 2008) ).

24  109.                MOREOVER, THESE DEFENDANTS WERE, AND

25  CONTINUE TO BE, DELIBERATELY INDIFFERENT TO PLAINTIFF'S

26  HEALTH AS THEY WERE, AND ARE, AWARE OF THE LACK OF

27  CLEANING SUPPLIES AND UNSANITARY LIVING ENVIRONMENT

28  AND CONTINUE TO SUBJECT PLAINTIFF TO IT (SUPRA).

(c.) DELIBERATE INDIFFERENCE TO PLAINTIFF'S
SERIOUS MENTAL HEALTH CONDITION AND NEEDS:

110.            AS A RESULT OF PLAINTIFF'S NINE YEARS OF
SUCH SOLITARY CONFINEMENT AND WRONGFUL REVALIDATION, HE
SUFFERS FROM MAJOR DEPRESSION AND SLEEP DISORDERS.

111.            THE SERIOUS MENTAL HEALTH IMPACT OF
EVEN A FEW YEARS IN SOLITARY CONFINEMENT IS WELL
DOCUMENTED: "EMPIRICAL RESEARCH ON SOLITARY AND SUPERMAX-
LIKE CONFINEMENT HAS CONSISTENTLY AND UNEQUIVOCALLY DOCUMENT-
ED THE HARMFUL CONSEQUENCES OF LIVING IN THESE KINDS OF
ENVIRONMENTS". STUDIES UNDERTAKEN OVER FOUR DECADES
CORROBORATE SUCH AN ASSERTION (HANEY, CRAIG, "MENTAL HEALTH
ISSUES IN LONG-TERM SOLITARY & 'SUPERMAX' CONFINEMENT," IN "CRIME &
DELINQUENCY", VOL. 49, NO. 1, JANUARY 2003, PP. 124-156; SEE, ALSO,
"NO WAY OUT" BY SHANE BAUER (FORMER AMERICAN HOSTAGE HELD
IN IRAN) VOL. 37, NO. 6, NOVEMBER/DECEMBER 2012 ISSUE OF
"MOTHER JONES" PG. 22; AVAILABLE @ MOTHER JONES.COM — ATTACHED
HERETO AS EXHIBIT 'FORTY THREE').

112.            AS THIS COURT SET OUT, OVER 17 YEARS AGO,
TO DETERMINE AND MANDATE THE OBLIGATIONS FOR C.D.C. TO
PROVIDE ITS PRISONERS ACCESS TO ADEQUATE MENTAL HEALTH
CARE IN _COLEMAN V. WILSON_ (912 F. SUPP. 1282 (E.D. CAL. 1995)),
IT RECENTLY HELD THAT: "AFTER FOURTEEN YEARS OF REMEDIAL
EFFORTS UNDER THE SUPERVISION OF A SPECIAL MASTER AND
WELL OVER SEVENTY ORDERS BY THE _COLEMAN_ COURT, THE
CALIFORNIA PRISON SYSTEM STILL CANNOT PROVIDE
THOUSANDS OF MENTALLY ILL INMATES WITH CONSTITUTIONALLY

1   ADEQUATE MENTAL HEALTH CARE " ( THREE JUDGE COURT IN

2   *COLEMAN V. SWARZENEGGER* ) U.S.D.C. ( E.D. CAL.) NO. CIV S-90-0520 LKK

3   JFM P — OPINION AND ORDER OF AUGUST 4, 2009 AT PAGE 22 ).

4       113.         C.S.P. DEFENDANTS ARE NO EXCEPTION.

5       114.         THE MENTAL HEALTH CARE IN THE C.S.P.

6   S.H.U. IS WOEFULLY INADEQUATE. DEFENDANTS GONZALES,

7   SOLIMAN, BLANCHARD AND BYLUND HAVE BEEN DELIBERATELY

8   INDIFFERENT TO PLAINTIFF'S SERIOUS MENTAL HEALTH CONDITION

9   AND NEEDS AS WELL AS TO HIS PRIVACY AND DIGNITY

10  REGARDING SUCH DEEPLY PERSONAL AND PRIVATE MATTERS.

11      115.         ONCE A WEEK, DEFENDANT GONZALES, A

12  "LICENSED PSYCHIATRIC TECHNICIAN", DESPITE C.D.C AND C.S.P.

13  S.H.U. POLICY REGARDING PRISONER MENTAL HEALTH CARE /

14  EVALUATIONS TO BE "CONDUCTED WITH PROPER PRIVACY" AND "IN

15  SUCH A MANNER AS TO MAINTAIN THE DIGNITY OF THE INMATE "

16  ( C.C.R., TITLE 15 § 3361 (c) ) ), WALKS THROUGH PLAINTIFF'S

17  S.H.U. HOUSING UNIT (4B-4L) WITH A PRISON GUARD WHO IS

18  ASSIGNED TO THE HOUSING UNIT — MOST OFTEN WITH DEFENDANTS

19  NAVARRO OR HAYSE.

20      116.         AT THIS TIME, DEFENDANT GONZALES DOES

21  NOT " MONITOR PLAINTIFF'S MENTAL HEALTH SYMPTOMS " ( C.S.P.

22  *OPERATIONAL PROCEDURE* NO. 1025 (X) ), BUT INSTEAD, SIMPLY WALKE —

23  PASSING THROUGH THE SECTION AND MERELY SLIDES PLAINTIFF A

24  CROSS-WORD PUZZLE THROUGH THE GAP IN HIS CELL DOOR AND

25  CONTINUES MOVING ON WITHOUT EVER IDENTIFYING HERSELF AS

26  A MENTAL HEALTH STAFF AND WITHOUT ASKING PLAINTIFF ANY

27  QUESTIONS — PASSING THROUGH THE BOTTOM TIER CELLS /

28  SECTION (CONTAINING 10-CELLS) IN LESS THAN 20-SECONDS.

117.        MOREOVER, ON THE SPECIFIC — ROUTINE DAYS/
TIMES DEFENDANT GONZALES CONDUCTED HER WALK BYS,
PLAINTIFF WOULD BE AT THE LAW LIBRARY — AS SCHEDULED TO
WORK ON HIS *PRO SE* LEGAL DEADLINES AND WOULD NOT BE IN
HIS CELL. THEREFORE, DEFENDANT GONZALES WOULD NOT "SEE"
HIM NOR COME BACK LATER TO CHECK ON HIM. AS SUCH,
PLAINTIFF'S MENTAL HEALTH SYMPTOMS WERE/WOULD NOT BE
"MONITORED REGULARLY" (*Id.*).

118.          ON MAY 16, 2011, PLAINTIFF FILED A C.D.C.
COMPLAINT REGARDING THE ABOVE (APPEAL LOG NO. COR-09-11-
11693). NEVERTHELESS, THIS PATTERN CONTINUED AND
DEFENDANT NAVARRO AND RAMIREZ BEGAN ASKING PLAINTIFF
IN ACCUSATORY TONES: "WHY DID YOU FILE A COMPLAINT
AGAINST OUR PARTNER GONZALES, THE PSYCH. TECH.".

119.          THEREAFTER, WHEN PLAINTIFF WOULD SEE
DEFENDANT GONZALES WALKING PASS THE TIER, PLAINTIFF WOULD
TRY TO SPEAK TO HER BY CALLING OUT TO HER THROUGH THE GAP
IN HIS CELL DOOR, BUT THE GUARD WITH HER WOULD ALWAYS
ANSWER UP FOR HER AND TELL PLAINTIFF TO "FILL OUT A
MEDICAL FORM AND SEND IT TO THE DOCTOR IF YOU HAVE A
PROBLEM BECAUSE WE DON'T WANT TO HEAR IT AND GONZALES
IS TIRED OF ALL YOUR CRYING AND COMPLAINING" (SEE
EXHIBITS 'FORTY FOUR' AND 'FORTY FIVE' ATTACHED HERETO).

120.          AS SUCH, DEFENDANT GONZALES' 2-SECOND
"DRIVE-BYS" PAST PLAINTIFF'S CELL, DO NOT "MONITOR [HIS]
SYMPTOMS REGULARLY" NOR ALLOW HIM WITHOUT EMBARRASS-
MENT TO SEEK OR REQUEST MENTAL HEALTH ASSISTANCE.

121.          DURING THIS TIME, DEFENDANT SOLIMAN

WAS ASSIGNED AS PLAINTIFF'S "CASE MANAGER" — MENTAL HEALTH CLINICIAN.

122. ON MARCH FIRST, 2011, PLAINTIFF HANDED DEFENDANT SOLIMAN A SEALED ENVELOPE MARKED: "FOR: E. SOLIMAN (PSYCHOLOGIST) — CONFIDENTIAL — DOCTOR / PATIENT PRIVILEGE", CONTAINING A 2-PAGE LETTER AND 3 PHOTO COPIES OF PLAINTIFF'S PAST ART WORK (SEE EXHIBIT 'FORTY SIX' HERETO). 2.(F.N.)

123. ON MARCH 2ND, 2011, UNBEKNOWNST TO PLAINTIFF, AND CONTRARY TO C.D.C. POLICY AND THE _COLEMAN_ REMEDIAL MENTAL HEALTH GUIDE, DEFENDANT SOLIMAN BROKE PLAINTIFF'S TRUST, CONFIDENCE AND "PSYCHOTHERAPIST — PATIENT PRIVILEGE" BY REVEALING SAID LETTER (COMPLAINT / REQUEST) TO PRISON GUARDS (NON-MEDICAL / MENTAL HEALTH STAFF) INCLUDING DEFENDANT BEER AND THE I.G.I. DEFENDANTS, DOCUMENTING IT AS "OVERFAMILIAR BEHAVIOR", "SEXUALLY SEDUCTIVE" AND "GANG RELATED ARTWORK" WHICH DEFENDANT BLANCHARD SIGNED OFF ON (SEE EXHIBIT 'FORTY — SEVEN' HERETO).

124. THE I.G.I., AND THE OTHER CUSTODY OFFICIAL, DID NOT FIND DEFENDANT SOLIMAN AND BLANCHARD'S ALLEGATIONS TO BE TRUE AND THEREFORE DID NOT ISSUE PLAINTIFF ANY GANG VALIDATION SOURCE POINTS, MEMO'S OR CHRONOS REGARDING THE DRAWINGS NOR ANY RULE VIOLATION / DISCIPLINARY REPORTS REGARDING THE LETTER / COMPLAINT.

125. ON APRIL 4, 2011, PLAINTIFF RECEIVED A "ONE ON ONE" THERAPY SESSION WITH DEFENDANT SOLIMAN (AS

2.(F.N.) THIS LETTER WAS A COMPLAINT BY PLAINTIFF REGARDING THE LACK OF ANY MEANINGFUL MENTAL HEALTH CARE AVAILABLE TO HIM OTHER THAN MEDICATION / SEDATION AND THEREFORE REQUESTING THERAPUTIC ART MATERIALS BASED ON PREVIOUS PSYCHOLOGIST'S RECOMMENDATIONS AND THE VALUE OF USING ART AS A THERAPUTIC TOOL.

38.

ROUTINELY SCHEDULED) WHEREIN SHE TOLD PLAINTIFF: "I TOOK YOUR LETTER /COMPLAINT AS NEGATIVE OPINIONS ABOUT OUR MENTAL HEALTH DEPARTMENT HERE AND AS YOU ARE TRYING TO TELL US HOW TO DO OUR JOBS ... I DID NOT LIKE IT SO I SHOWED IT AND YOUR DRAWINGS TO SERGEANT BEER AND HE SUGGESTED I GIVE IT TO I.G.I. FOR VALIDATION EVIDENCE AND HE SAID I SHOULD WRITE YOU UP FOR OVERFAMILIARITY BECAUSE YOU CONSTANTLY COMPLAIN ABOUT EVERYTHING AND FILE LOTS OF 602's .... I AGREED WITH HIM AND I GAVE YOUR LETTER AND ART WORK TO I.G.I. FOR VALIDATION EVIDENCE — EVIDENCE OF YOUR CONTINUED GANG ACTIVITY AND I ALSO WROTE YOU UP FOR OVERFAMILIAR BEHAVIOR." SHE ALSO TOLD PLAINTIFF THAT "ALL FURTHER CONTACTS AND SESSIONS WILL BE MONITORED AND SCREENED BY MY OFFICERS (PRISON GUARDS) ".

126.        THEREINAFTER) DEFENDANT SOLIMAN BEGAN CONDUCTING ALL "ONE ON ONE THERAPY SESSIONS" WITH PLAINTIFF IN A ROOM WHERE THE DOOR WOULD BE LEFT OPENED, ALLOWING PRISON GUARDS "STATIONED" THERE (ACTUALLY SITTING THERE FACING PLAINTIFF AND "OBSERVING" THE ENTIRE SESSIONS) TO BE ABLE TO HEAR THE ENTIRE SESSIONS AND NOT ALLOWING PLAINTIFF THE "PROPER PRIVACY AS TO MAINTAIN HIS DIGNITY" AND CONFIDENTIALITY NEEDED TO ACQUIRE MEANINGFUL MENTAL HEALTH TREATMENT WHICH "INVOLVES REVEALING DEEPLY PERSONAL AND PRIVATE MATTERS" (C.C.R. § 3361(c)) AND IS DELIBERATE INDIFFERENCE TO PLAINTIFF'S MENTAL HEALTH CONDITION AND NEEDS. MOREOVER) DEFENDANT SOLIMAN WOULD ALSO CONDUCT "CELL-FRONTS" (EVALUATIONS OF PLAINTIFF) AT HIS CELL DOOR

39.

1  WITH TWO PRISON GUARDS NEXT TO HER LISTENING ) CONTRARY

2  TO C.D.C. , C.C.R. AND _COLEMAN_ REMEDIAL PLAN PROCEDURES .

3      127.          THEREIN ) WHEN PLAINTIFF WOULD EXPRESS TO

4  DEFENDANT SOLIMAN HIS SERIOUS DEPRESSION CAUSED BY HIS

5  ERRONEOUS RE-VALIDATION AND SUCH LONG SOLITARY

6  CONFINEMENT ) SHE WOULD TELL PLAINTIFF TO DEBRIEF AND HE

7  WOULD THEN BE LET OUT OF SOLITARY CONFINEMENT AND

8  "CURED" OF HIS DEPRESSION .

9      128.          DURING THIS TIME PLAINTIFF WAS PROCEEDING

10  _PRO SE_ BEFORE THE U.S. DISTRICT COURT ) FOR THE NORTHERN

11  DISTRICT OF CALIFORNIA IN CASE NO. CO9-0178 CRB AND WAS

12  ACTIVELY PARTICIPATING IN COURT ORDERED SETTLEMENT

13  CONFERENCES WITH THE DEFENDANTS BEFORE U.S. MAGISTRATE

14  JUDGE NANDOR VADAS REGARDING PLAINTIFFS' CIVIL SUIT

15  FOR THE 2004 SALINAS VALLEY VALIDATION (¶ 37 _SUPRA_).

16      129.          IN PREPARATION OF SAID SETTLEMENT

17  CONFERENCES AND POSSIBLE TRIAL ( WHILE EXECUTING A

18  MOTION FOR RECONSIDERATION AGAINST THE PARTIAL SUMMARY

19  JUDGMENT RULING ) PLAINTIFF WAS GIVEN ACCESS TO THE

20  S.H.U.'S "SATELLITE LAW LIBRARY" JUST ONE TIME PER WEEK.

21  ON THOSE VERY SAME DAYS THAT PLAINTIFF WOULD BE

22  SCHEDULED FOR LAW LIBRARY ACCESS OR SETTLEMENT

23  CONFERENCE CALLS WITH JUDGE VADAS ( JANUARY 4,

24  2012 IN PARTICULAR ) ) DEFENDANT SOLIMAN WOULD

25  COME TO PLAINTIFF'S CELL DOOR WITH TWO GUARDS ("ESCORTS")

26  AND TELL PLAINTIFF HE HAD TO CHOOSE BETWEEN USING

27  THE LAW LIBRARY / SETTLEMENT CONFERENCE OR HAVING

28  HIS MONTHLY MENTAL HEALTH "SESSION" WITH HER ( THIS ALSO

included his outdoor "exercise time"). When plaintiff asked her if she could reschedule their "session", she would state to plaintiff that "mental health is a privilege, not a right" and that plaintiff's request for rescheduling would be considered by her as a "refusal for treatment", "documented" as such and he would not be rescheduled; instead, he would have to wait another 30-days wherein this same cycle would be continually repeated.

130.        The cumulative effect of such extremely prolonged solitary confinement and defendants' callous disregard and deliberate indifference to plaintiff's serious mental health condition and needs as outlined above, has had, and continues to have, a serious impact on plaintiff's mental health and poses a significant risk of future debilitating and permanent mental health illness (HELLING V. MCKINNEY, 509 U.S. 25, 36 (1993)).

D.        FACTS PERTAINING TO FIRST AMENDMENT CLAIMS.

        (3.)    RETALIATION FOR COMPLAINTS.

                BACKGROUND:

131.        In 2009, plaintiff was assisting a blind prisoner in C.S.P. S.H.U. 4B-4L, Victor Urbina, with various grievances against defendants Beer, Casillas, et al., for failing to provide Mr. Urbina with reasonable accommodations as required under the A.D.A. (U.S.C. Title

41.

42 § 12132 : (AMERICANS WITH DISABILITIES ACT) ; E.G. ; ASSISTANCE
WITH READING , WRITING AND DAILY LIFE ACTIVITIES .

132.             WHEN DEFENDANT BEER REVIEWED AND
INTERVIEWED MR. URBINA REGARDING AND SUCH WRITTEN
GRIEVANCE , HE ASKED MR. URBINA WHO WAS ASSISTING HIM WITH
THE WRITING OF SUCH COMPLAINTS . WHEN MR. URBINA TOLD HIM
THAT IT WAS PLAINTIFF , DEFENDANT BEER TOLD MR. URBINA
THAT PLAINTIFF WAS " NO GOOD AND HAD SAFETY CONCERNS
WITH THE SHU " AND  THAT MR. URBINA " SHOULD STAY AWAY "
FROM PLAINTIFF  OR " GET INTO TROUBLE " HIMSELF . DEFENDANT
BEER THEN WENT TO PLAINTIFF'S CELL DOOR AND TOLD HIM THAT
HE (BEER) DID NOT LIKE " JAIL HOUSE LAWYERS " AND THAT IF
PLAINTIFF AND MR. URBINA KEPT FILING COMPLAINTS , HE
WOULD MOVE THEM AND TAKE ALL THEIR PROPERTY .

133.             DESPITE SAID THREAT / WARNING , PLAINTIFF
CONTINUED TO ASSIST MR. URBINA AND SUCCESSFULLY PETITIONED
THE STATE SUPERIOR COURT WHICH GRANTED MR. URBINA
PRO BONO COUNSEL AND PARTIAL RELIEF ON HIS A.D.A.  CLAIMS
( IN RE VICTOR URBINA , ON HABEAS CORPUS ) CASE NO. 07W0236A ,
KINGS COUNTY SUPERIOR COURT ) , HOWEVER , ALTHOUGH  MR.
URBINA OBTAINED COURT ORDERED RELIEF , PRISON OFFICIALS ,
INCLUDING DEFENDANT BEER , FAILED TO COMPLY WITH THE
ORDERED RELIEF , AND INSTEAD , TRANSFERED MR. URBINA  TO
ANOTHER PRISON , MUCH FARTHER AWAY FROM HIS FAMILY AND
HIS ASSISTANT (PLAINTIFF) AND OUT OF THAT COURT'S JURISDICTION .

134.             IN AUGUST OF 2012 , C.S.P. 4B-4L S.H.U.
PRISONER , WILLIAM LUNA , SUBMITTED AN " INMATE REQUEST FOR
LEGAL ASSISTANCE " FORM TO DEFENDANT BEER FOR

42 .

1  APPROVAL TO RECEIVE LEGAL ASSISTANCE FROM PLAINTIFF,
2  PER C.D.C. AND C.S.P. POLICY, FOR HIS POST-CONVICTION APPEAL.

3     135.         ON AUGUST 16, 2012, PRISONER LUNA
4  ASKED DEFENDANT BEER THE STATUS OF SAID REQUEST —
5  WHETHER HE HAD APPROVED IT. THEREIN, DEFENDANT BEER
6  TOLD MR. LUNA HE WOULD NOT APPROVE PLAINTIFF TO ASSIST
7  HIM BECAUSE PLAINTIFF "IS A TROUBLE MAKER AND NO GOOD"
8  AND HE WAS GOING TO TAKE ALL PLAINTIFF'S PROPERTY AND
9  "MOVE HIM TO ONE-LEFT WITH THE BIG BOYS IF HE KEEPS
10 COMPLAINING ABOUT THINGS AND FILING 602's."

11    136.        SHORTLY THEREAFTER, DEFENDANT GIPSON
12 (C.S.P. WARDEN), DEFENDANT BEER AND A C.S.P. APPEALS
13 COORDINATOR WALKED BY PLAINTIFF AS HE WAS OUTSIDE IN
14 THE "EXERCISE CAGES", WHEREIN PLAINTIFF STOPPED WARDEN
15 GIPSON AND APPRISED HER OF HIS CONFIDENTIAL LEGAL MAIL
16 FROM HIS ATTORNEY AND THE COURTS BEING OPENED OUTSIDE
17 OF HIS PRESENCE AND THAT HIS HOUSING UNIT GUARDS
18 WERE STILL NOT PASSING OUT WEEKLY SUPPLIES SUCH AS
19 DISINFECTANT, SOAP, TOILET PAPER, FORMS, ETC... AND
20 ASKED HER FOR HER ASSISTANCE IN REMEDYING THOSE
21 ISSUES. STANDING THERE, DEFENDANT BEER APPEARED
22 VERY UPSET AND ANGRY.

23    137.        APPROXIMATELY 45-MINUTES LATER,
24 DEFENDANT BEER RETURNED ALONE AND APPROACHED
25 PLAINTIFF IN A VERY AGGRESSIVE AND LOUD MANNER,
26 TELLING PLAINTIFF THAT HE WAS BACK NOW AND IF
27 PLAINTIFF STARTED UP AGAIN WITH ALL HIS "CRYING AND
28 FILING 602's") HE WOULD "MOVE HIS A#@ OUT OF THE

1 BUILDING) TAKE ALL HIS PROPERTY AND MAKE HIS LIFE
2 MISERABLE) AND HE WOULD NOT APPROVE HIM TO ASSIST
3 ANYONE WITH LEGAL WORK" (SEE EXHIBITS '48'; '49' AND
4 '50' ATTACHED HERETO — DECLARATIONS OF A. HINOJOSA; O.
5 GUZMAN; AND E. ROBLES).

6     138.         JUST THREE DAYS PRIOR TO THE ABOVE,
7 ON AUGUST 13, 2012, DEFENDANT HAYSE ISSUED PLAINTIFF
8 HIS BREAKFAST TRAY (WEARING DIRTY BLACK LEATHER GLOVES AND NO
9 HAIR NET). UPON TRAY PICK UP, PLAINTIFF ASKED DEFENDANT
10 HAYSE IF HE COULD FILL OUT A "MEAL SAMPLE REPORT" TO
11 WHICH SHE ASKED "WHY?". PLAINTIFF REPLIED THAT HE WISHED
12 TO DOCUMENT THAT THE FOOD WAS VERY COLD, SERVED IN AN
13 UNSANITARY MANNER AND MISSING ITEMS." DEFENDANT HAYSE
14 BECAME VERY ANGRY AND SAID SHE WAS NOT GOING TO GIVE HIM
15 "NOTHING" AND THAT IF PLAINTIFF CONTINUED COMPLAINING
16 ABOUT THE FOOD", SHE WAS GOING TO HAVE DEFENDANT BEER
17 MOVE HIM TO THE "ISOLATION UNIT" IN BUILDING "ONE-LEFT".

18     139.         ON AUGUST 16, 2012, UPON RETURNING
19 FROM THE OUTSIDE EXERCISE CAGES AND THE THREATS/
20 WARNINGS MADE BY DEFENDANT BEER (¶ 137 SUPRA), PLAINT-
21 -IFF FOUND HIS CELL COMPLETELY TRASHED (RANSACKED)
22 WITH ALL HIS LEGAL PAPERS STREWN ALL OVER THE BED AND
23 FLOOR — SOME MISSING, INCLUDING SEVERAL LEGAL BOOKS;
24 AT WHICH TIME HE WAS TOLD THAT DEFENDANT HAYSE HAD
25 "HIT" (SEARCHED) HIS CELL (SEE EXHIBITS '18' AT ¶ 4;
26 '19' AT ¶ 12; '20' AT ¶¶ 11, 12; '21' AT ¶¶ 11, 12; AND '51' —
27 DECLARATION OF J. PALOS, ATTACHED HERETO).

28     140.         THE FOLLOWING MORNING, ON AUGUST 17,

2012) DEFENDANT MATSE GAVE PLAINTIFF HIS BREAKFAST TRAY
AND TOLD HIM: " HOW DO YOU LIKE *MY* CELL SEARCHES? ...
KEEP ON COMPLAINING ABOUT THINGS TO THE WARDEN AND NEXT
TIME I'LL THROW AWAY ALL YOUR LEGAL CRAP AND HAVE YOU
TO ONE LEFT " ( SEE EXHIBIT '51' ATTACHED HERETO ) .


(b.) INTERFERENCE AND BREACH OF *CONFIDENTIAL* MAIL.


141.          ON JANUARY 5) 2011) THE UNITED STATES
COURT OF APPEALS FOR THE NINTH CIRCUIT APPOINTED) PRO BONO,
ATTORNEY JUNELLE HARRIS TO REPRESENT PLAINTIFF ON
APPEAL IN CASE NO. 09-17775 REGARDING HIS CIVIL SUIT
FOR HIS INITIAL SEGREGATION ON APRIL 15) 2004 ( ¶ 36 SUPRA).

142.          ON JANUARY 18) 2012) THE U.S. DISTRICT
COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA APPOINTED,
PRO BONO) ATTORNEYS TIFFANY MINH BUI AND ALICIA ANNE
ADDONATO OF THE REED SMITH LAW FIRM TO REPRESENT
PLAINTIFF IN CASE NO. C09-0178 CRB REGARDING HIS CIVIL
SUIT FOR HIS INITIAL PRISON GANG VALIDATION IN 2004
( ¶¶ 36 & 37 SUPRA ) .

143.          BOTH OF THE ABOVE CASES ARE CIVIL LAW
SUITS AGAINST VARIOUS C.D.C. OFFICIALS) GUARDS AND PRISON
EMPLOYEES AND HAVE MERITABLE CLAIMS.

144.          IN JUNE OF 2012) DEFENDANTS BEGAN A
SYSTEMATIC AND CONTINUOUS PATTERN OF OPENING AND
REVIEWING PLAINTIFF'S LEGAL AND CONFIDENTIAL MAIL OUTSIDE OF
PLAINTIFF'S PRESENCE ( IN THE PRISON'S MAIL ROOM ) . SAID
MAIL WAS ADDRESSED AND SENT TO HIM FROM HIS ABOVE

45.

1  NAMED COURT APPOINTED ATTORNEYS AND FROM THE CLERK

2  OF THE NINTH CIRCUIT COURT OF APPEALS. ALL SUCH

3  MAILINGS WERE CLEARLY MARKED AS EITHER "CONFIDENTIAL"

4  OR "LEGAL" MAIL, BEARING THE ATTORNEYS' NAME, FIRM

5  AND ADDRESS, INCLUDING THE NINTH CIRCUIT'S MAILING.

6  AGAIN, THESE MAILINGS WERE OPENED AND REVIEWED BY

7  DEFENDANT GUTIERREZ-RUSSELL OUTSIDE OF PLAINTIFF'S

8  PRESENCE, VIEW AND WITHOUT PLAINTIFF'S CONSENT.

9      145.        THE FIRST INTERFERENCE OCCURRED ON

10  JUNE 13, 2012, WHEN THE CLERK OF THE NINTH CIRCUIT INFORMED

11  PLAINTIFF'S COUNSEL, MS. HARRIS, THAT THE AUDIO RECORDING

12  OF ORAL ARGUMENT (IN SAID CASE) MAILED TO PLAINTIFF BY

13  THE CLERK UNDER COVER OF THE U.S. COURT OF APPEALS FOR THE

14  NINTH CIRCUIT, WAS RETURNED BY DEFENDANT WITHOUT ANY

15  EXPLANATION AND WITHOUT ANY NOTICE GIVEN TO PLAINTIFF

16  (SEE EXHIBIT 'FIFTY TWO' ATTACHED HERETO).

17      146.        THE NEXT INTERFERENCE AND BREACH

18  OCCURRED WHEN ON JUNE 29, 2012, PLAINTIFF'S COURT

19  APPOINTED COUNSEL, MS. SUI, SENT PLAINTIFF A CONFIDENTIAL

20  ATTORNEY-CLIENT COMMUNICATION WITH HER COURT MOTION AND

21  CASE RELATED - MENTAL HEALTH-MATERIAL (SEE EXHIBIT

22  '53' HERETO), HOWEVER, PLAINTIFF DID NOT RECEIVE IT

23  UNTILL JULY 23, 2012 - ALMOST A MONTH LATER, OPENED

24  OUTSIDE OF HIS PRESENCE AND MISSING DOCUMENTS (Id.).

25      147.        ON AUGUST 2, 2012, PLAINTIFF RECEIVED

26  A CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION FROM HIS COUNSEL,

27  MS. HARRIS WHICH WAS OPENED OUTSIDE OF HIS PRESENCE

28  (SEE EXHIBIT 'FIFTY-FOUR' ATTACHED HERETO — PRISON

1  GUARD "HOO" SIGNED PLAINTIFF'S REQUEST) ACKNOWLEDGING

2  THAT SAID MAIL WAS GIVEN TO PLAINTIFF ALREADY OPENED

3  OUTSIDE OF HIS PRESENCE ).

4  148.  ON AUGUST 9, 2012) PRISON GUARD HOO

5  AGAIN HANDED A *CONFIDENTIAL ATTORNEY-CLIENT* MAILING FROM

6  ATTORNEY TIFFANY M. BUI TO PLAINTIFF WHICH WAS POSTMARKED

7  JULY 31, 2012 AND ALREADY OPENED OUTSIDE OF PLAINTIFF'S

8  PRESENCE ( SEE EXHIBIT 'FIFTY FIVE' HERETO ).

9  149.  ON AUGUST 13, 2012) PRISON GUARD HOO

10 AGAIN HANDED A *CONFIDENTIAL ATTORNEY-CLIENT* COMMUNICATION

11 FROM ATTORNEY TIFFANY M. BUI TO PLAINTIFF WHICH WAS POST-

12 MARKED  AUGUST 7, 2012 AND ALSO ALREADY-PREVIOUSLY

13 OPENED  OUTSIDE OF HIS PRESENCE (SEE EXHIBIT '56' HERETO ).

14 150.  DURING THIS TIME) PLAINTIFF AND HIS

15 COUNSEL) MS. BUI) WERE PREPARING AND STRATEGIZING, BY

16 WAY OF CORRESPONDENCE) FOR AN UPCOMING COURT ORDERED

17 SETTLEMENT CONFERENCE SET FOR SEPTEMBER 19, 2012 (SEE

18 EXHIBIT '57' ATTACHED HERETO) REGARDING HIS LAW SUIT

19 AGAINST C.D.C. AND I.G.I. OFFICIALS RELATING  TO HIS

20 INITIAL  2004 GANG-VALIDATION ( ¶ 37 SUPRA ).

21 151.  ON AUGUST 19, 2012) AFTER EXHAUSTING

22 THE INFORMAL LEVEL C.D.C. APPEAL PROCESS) PLAINTIFF FILED

23 A FORMAL COMPLAINT (C.D.C. 602 FORM) REGARDING THE ABOVE

24 INTERFERENCES AND BREACHES OF HIS *CONFIDENTIAL* AND *LEGAL*

25 MAIL  WHEREIN) ON AUGUST 31, 2012) DEFENDANT GUTIERREZ-

26 RUSSELL) THE C.S.P. MAILROOM SUPERVISOR) APPROACHED

27 PLAINTIFF'S  CELL DOOR WITH DEFENDANT NAVARRO FOR)

28 PURPORTEDLY) TO "INTERVIEW" PLAINTIFF  REGARDING

1  said 602 ) wherein she told plaintiff that he is "prison

2  gang" and that "I.G.I." told her to inspect all of

3  plaintiff's mail ) "including legal mail" then she

4  "forwards it to I.G.I." and then it goes to plaintiff —

5  "that is the chain of control"... and after further

6  comments ) defendant Navarro stated: " if you don't

7  like it Saavedra ) just deerief " with the two of

8  them laughing (see exhibits '44' @ ¶ 10 & '45'- LAST PARAGRAPH).

9

10     (c.) DENIAL OF RIGHT OF ACCESS TO THE COURTS

11

12     152.          on January 12, 2012 ) plaintiff submitted

13  a c.d.c. 602 form ( prisoner grievance ) regarding not being

14  supplied with disinfectant to sanitize his toilet and cell

15  and not being provide with " c.d.c.r. 22 forms" ( see pages

16  32 — 34 herein ). said grievance is attached hereto as

17  exhibit 'fifty eight' .

18     153.          on february 3, 2012 ) defendant Cribbs,

19  a c.s.p. "appeals coordinator", "rejected" plaintiff's

20  grievance ) stating that he did not first use said " c.d.c.r.

21  22 form" (see exhibit 'fifty nine' attached hereto ).

22     154.          on february 6, 2012 ) plaintiff

23  resubmitted said grievance with a c.d.c. G.A.—22 form

24  explaining that he could not comply with the c.d.c.r 22 form

25  process because ) as stated IN HIS GRIEVANCE ) his housing

26  unit guards were not passing them out — the issue plaintiff

27  was attempting to seek redress on . nevertheless ) his 602

28  grievance form ) the rejection form and his G.A. 22 form

1  WERE ALL RETURNED TO HIM WITH A NOTATION STATING: "DENIED —

2  FOLLOW DIRECTIONS" (SEE EXHIBIT 'SIXTY' HERETO). IT SHOULD

3  ALSO BE NOTED THAT AT THE BOTTOM OF THE REJECTION FORM (EX.

4  '59' HERETO)) IT STATES: " YOU CAN NOT APPEAL A REJECTED APPEAL."

5      155.              EXHIBITS '18' — '27' AND '30' — '36' ATTEST TO

6  THE FACT THAT SUCH C.D.C.R. 22 FORMS ARE NOT READILY  OR

7  REGULARLY  MADE AVAILABLE TO THE S.H.U. PRISONERS IN

8  PLAINTIFF'S  HOUSING UNIT.

9      156.              ON OCTOBER 24, 2012) PLAINTIFF SUBMITTED A

10 PRISONER GRIEVANCE FORM (602) REGARDING THE PRISON'S LAW

11 LIBRARY SUPERVISOR'S FAILURE TO RESPOND TO PLAINTIFF'S

12 C.D.C.R. 22 FORM REGARDING INADEQUATE LAW LIBRARY ACCESS

13 (EXHIBIT '61' HERETO) IN WHICH, ON NOVEMBER 5, 2012) DEFENDANT

14 CRIBBS ( ALSO A C.S.P. APPEALS COORDINATOR) "REJECTED" IT

15 WITH A  "CATCH — 22" MEASURE) STATING THAT PLAINTIFF

16 MUST SOMEHOW DO THE IMPOSSIBLE — FORCE THE  LIBRARY

17 SUPERVISOR TO RESPOND FIRST TO PLAINTIFF'S C.D.C.R.  22

18 FORM (SEE EX. '62' HERETO)) WHICH IS THE VERY ISSUE

19 PLAINTIFF WAS GRIEVING ABOUT .

20      157.              ON NOVEMBER 15, 2012) PLAINTIFF SUBMITTED

21 A 602 GRIEVANCE ONCE AGAIN REGARDING THE PRISON LAW

22 LIBRARY HEAD CHIEF'S FAILURE TO RESPOND TO PLAINTIFF'S

23 C.D.C.R. 22 FORMS (EX. '63' HERETO)) WHICH ON NOVEMBER 28,

24 2012, DEFENDANT PARRA "REJECTED" , STATING THAT PLAINTIFF

25 HAD "NOT OBTAINED A SUPERVISOR'S RESPONSE ON YOUR C.D.C.R.

26 22 FORMS (SEE EXHIBIT 'SIXTY FOUR' ATTACHED HERETO) .

27      158.              ON DECEMBER 18, 2012) PLAINTIFF SUBMITTED

28 A C.D.C. "GROUP APPEAL" (PRISONER GRIEVANCE) REGARDING  THE

1  DEFENDANTS, HOUSING UNIT GUARDS, NOT ISSUING PLAINTIFF AND

2  FELLOW 4B-4L S.H.U. PRISONERS WITH THE ADEQUATE MEANS FOR

3  PERSONAL HYGIENE (EX. '65' HERETO), WHICH ON JANUARY 3, 2013,

4  DEFENDANT PARRA "REJECTED", CITING C.C.R. § 3084.6 (b)(10),

5  BUT THEN CLAIMED PLAINTIFF UTILIZED "UNAUTHORIZED INK" (SEE

6  EX. '66' HERETO); HOWEVER, C.C.R. § 3084.6 (b)(10) (NOR ANY

7  OTHER RULE) DOES NOT STATE THAT A PRISONER'S GRIEVANCE

8  (602) MAY BE "REJECTED" BECAUSE HE UTILIZED "UNAUTHORIZED

9  INK". C.D.C. RULES DO NOT DEFINE NOR DISTINGUISH THE TYPE

10  OF INK THAT MUST BE USED, ONLY THAT THE GRIEVANCE

11  FORM MUST BE PRINTED IN "INK OR TYPED" AS OPPOSED

12  TO PENCIL; REJECTION CRITERIA:

13      "THE INMATE OR PAROLEE HAS NOT SUBMITTED HIS/
        HER APPEAL PRINTED LEGIBLY IN INK OR TYPED

14      ON THE LINES PROVIDED ON THE APPEAL FORMS IN
        NO SMALLER THAN A 12-POINT FONT OR FAILED TO

15      SUBMIT AN ORIGINAL."

16  C.C.R., TITLE 15, § 3084.6 (b)(10).

17      159.        PLAINTIFF'S APPEAL FORM IS LEGIBLE, "IN

18  INK", ON THE LINES PROVIDED AND HE SUBMITTED THE ORIGINAL FORM.

19      160.        DEFENDANT CRIBBS AND PARRA'S "REJECTIONS"

20  AND REFUSALS TO PROCESS PLAINTIFF'S ABOVE STATED GRIEVANCES

21  FOR THE ABOVE STATED REASONS WHICH ARE INCONSISTANT WITH

22  OR UNSUPPORTED BY C.D.C. REGULATIONS, IS AN "INTERFERENCE

23  WITH HIS FIRST AMENDMENT RIGHT TO PETITION THE GOVERNMENT

24  FOR REDRESS OF GRIEVANCES AND THEREFORE STATES A CLAIM

25  FOR DENIAL OF PLAINTIFF'S RIGHT OF ACCESS TO THE COURTS"

26  _KNIGHT V. NIMROD_, 14 FED. APPX. 921 (9TH. CIR. 2001).

27  //

28  //

E.       FAILURE TO LAWFULLY ADMINISTER, TRAIN & SUPERVISE

161.            PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

162.            SUPERVISORY DEFENDANTS HAVE A DUTY TO ESTABLISH POLICIES AND PROCEDURES FOR THE ADMINISTRATION OF CORCORAN STATE PRISON. SUPERVISORY DEFENDANTS HAVE A DUTY TO PERFORM AND EXECUTE THEIR DUTIES IN A MANNER CONSISTENT WITH STATE AND FEDERAL LAW. SUPERVISORY DEFENDANTS ALSO HAVE A DUTY TO TRAIN AND SUPERVISE SUBORDINATE EMPLOYEES.

163.            THE POLICIES AND PRACTICES COMPLAINED OF HEREIN HAVE BEEN AND CONTINUE TO BE IMPLEMENTED BY THESE DEFENDANTS UNDER COLOR OF STATE LAW, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES.

164.            DEFENDANTS HAVE BEEN AND ARE AWARE OF ALL OF THE DEPRIVATIONS COMPLAINED OF HEREIN, AND HAVE CONDONED OR BEEN DELIBERATELY INDIFFERENT TO SUCH CONDUCT.

165.            IT SHOULD BE OBVIOUS TO DEFENDANTS AND TO ANY REASONABLE PERSON THAT THE CONDITIONS IMPOSED ON PLAINTIFF AND SUCH SOLITARY CONFINEMENT FOR MANY YEARS CAUSES TREMENDOUS MENTAL ANGUISH, SUFFERING AND PAIN. MOREOVER, DEFENDANTS HAVE REPEATEDLY BEEN MADE AWARE, THROUGH ADMINISTRATIVE GRIEVANCES, HUNGER STRIKES, MEETINGS, SENATE COMMITTEE HEARINGS, WRITTEN COMPLAINTS AND HUMAN-RIGHTS ACTIVISTS, THAT THE CONDITIONS AND POLICIES COMPLAINED OF HEREIN ARE UNCONSTITUTIONAL AND IMPOSE SIGNIFICANT AND LASTING INJURY. AS SUCH, DEFENDANTS

HAVE BEEN DELIBERATELY INDIFFERENT TO PLAINTIFF'S PAIN AND SUFFERING.

166.        INDEED, DEFENDANTS HAVE DELIBERATELY AND KNOWINGLY CAUSED SUCH CONDITIONS AND DEPRIVATIONS IN AN EFFORT TO FORCE PLAINTIFF TO DEBRIEF.

167.        SUPERVISORY DEFENDANTS BREACHED THEIR DUTIES TO LEGALLY ADMINISTER THE PRISON, AND TO TRAIN AND SUPERVISE SUBORDINATES WHERE PLAINTIFFS RIGHTS WERE VIOLATED AS A RESULT OF DEFENDANTS ACTING IN VIOLATION OF DEFENDANTS' POLICIES AND PRACTICES, TO THE EXTENT SUPERVISORY DEFENDANTS HAD ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF THE VIOLATIONS AND DID NOTHING TO PREVENT OR CORRECT THEM.

## V.

### CLAIMS FOR RELIEF :

#### FIRST CAUSE OF ACTION

( FEDERAL DUE PROCESS )

168.        PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE, ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

169.        PLAINTIFF'S INDEFINITE SOLITARY CONFINEMENT IN THE S.H.U. CONSTITUTES A SIGNIFICANT AND ATYPICAL HARDSHIP.

170.        PLAINTIFF'S INDEFINITE SOLITARY CONFINEMENT IN THE S.H.U. VIOLATES THE DUE PROCESS CLAUSE OF THE FOUR-TEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION IN THAT DEFENDANTS :

a.)        PLACED PLAINTIFF AND RETAIN HIM IN THE S.H.U.

in solitary confinement on the basis of erroneous,
unreliable and false information that does not constitute
"some evidence" of prison gang activity;

b.)        failed to give plaintiff an opportunity to
present his views to the "critical decision maker" at "a
meaningful time and in a meaningful manner";

c.)        failed to provide plaintiff with any
periodic reviews amounting to more than "meaningless
gestures";

d.)        placed plaintiff in an inescapable
predicament that violates the fundamental principles of
due process of law; because defendants have incorrect-
ly labeled plaintiff as a gang associate, plaintiff can
only be released from the S.H.U. by divulging information
that he does not have;

e.)        utilized a system of gang validation and
debriefing as a pretext to justify indefinite solitary
confinement of plaintiff in the S.H.U. .

171.        When defendants Ortega and Ruiz failed
to provide plaintiff with adequate information and an
opportunity to present his views to the "critical decision
maker" as declared herein at ¶¶ 42-47 SUPRA, they
violated plaintiff's due process rights under the four-
teenth amendment to the United States constitution:

"A fundamental requirement of due process
is the opportunity to be heard at a
meaningful time and in a meaningful manner."
MATHEW v. ELDRIDGE, 424 U.S. 319, 333 (1976).

172.        When defendant Ruiz approved and submitted

53.

THE UNRELIABLE, UNCORROBORATED AND INSUFFICIENT "CONFIDENTIAL" GANG ACTIVITY INFORMATION TO THE O.C.S. AS DECLARED HEREIN AT ¶¶ 47-61 SUPRA, HE VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION — DUE PROCESS REQUIRES PRISON OFFICIALS TO HAVE AN EVIDENTIARY BASIS FOR THEIR DECISION TO CONFINE A PRISONER IN THE S.H.U. BASED ON ALLEGED GANG AFFILIATION WHICH MUST HAVE "SOME INDICIA OF RELIABILITY." (TAPIA V. ALAMEIDA, 2006 WL 842470 AT *9 (E.D. CAL. 2006) (CITING CATO V. RUSHEN, 824 F. 2d. 703, 705 (9TH. CIR. 1987) ).

173.        WHEN DEFENDANT MCCLURE APPROVED DEFENDANT RUIZ' "VALIDATION PACKAGE" AS DECLARED HEREIN AT ¶ 48 SUPRA, HE VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. AS SHOWN IN EXHIBIT 'SIXTY SEVEN' ATTACHED HERETO AT ¶¶ ONE-THREE; PART OF DEFENDANT MCCLURE'S JOB AND RESPONSIBILITY AS AN O.C.S. AGENT IS TO:

> "DETERMINE WHETHER THE EVIDENCE SUPPORTING THE GANG-VALIDATION PACKAGE MEETS C.D.C.R.'S STANDARDS, AND WHETHER THE INMATE HAD AN OPPORTUNITY TO EXPRESS HIS VIEWS ON VALIDATION. TO COME TO THIS DETERMINATION, THE PANEL REVIEWS EACH ITEM OF EVIDENCE TO DETERMINE IF IT MEETS C.D.C.R.'S STANDARDS, REVIEWS DOCUMENTATION TO ENSURE THAT THE INMATE WAS DISCLOSED THE EVIDENCE AND INTERVIEWED AT LEAST TWENTY-FOUR HOURS LATER, *AND ENSURES THAT THE IGI ADEQUATELY REPLIED TO ANY RESPONSE BY THE INMATE TO THE EVIDENCE.*"

Id. AT ¶ 3. (EMPHASIS ADDED). IN PLAINTIFF'S CASE HEREIN, DEFENDANT MCCLURE FAILED TO PERFORM SUCH DUTIES AS IT SHOULD HAVE BEEN OBVIOUS TO HIM AND TO ANY REASONABLE PERSON, BASED ON THE FACTS AS DECLARED HEREIN AT ¶¶ 42-61 SUPRA, THAT THE "EVIDENCE" SUBMITTED TO HIM IN THE GANG-VALIDATION

1  PACKAGE BY DEFENDANT RUIZ COULD NOT MEET C.D.C.R.'S

2  STANDARDS OR DEFINITION OF "GANG ACTIVITY"); THAT PLAINTIFF

3  WAS NOT GIVEN ADEQUATE DISCLOSURE OF THE "EVIDENCE";

4  THAT PLAINTIFF WAS NOT "INTERVIEWED" NOR HAD AN

5  OPPORTUNITY TO EXPRESS HIS VIEWS ON VALIDATION TO THE I.G.I.

6  AND THAT "THE I.G.I. ADEQUATELY REPLIED TO ANY

7  RESPONSE BY THE PLAINTIFF TO THE EVIDENCE") AS THE

8  RECORD BEFORE HIM WAS DEVOID OF SUCH (SEE), E.G., RUIZ

9  V. FISCHER, 2007 WL 2778665 (N.D. CAL. 2007) (PRISONER'S §1983

10  COMPLAINT STATED CLAIM AGAINST SPECIAL AGENT WHO APPROVED

11  THE GANG-VALIDATION PACKAGE AND SIGNED THE VALIDATION CHRONO).

12      174.          WHEN DEFENDANT GIPSON WAS MADE AWARE

13  OF THE ABOVE DECLARED DUE PROCESS VIOLATIONS VIA PLAINTIFF'S

14  C.D.C. GRIEVANCE ON APRIL 26, 2011 (ATTACHED HERETO AS EXHIBIT

15  'SIXTY EIGHT') AND AT HIS REVIEW HEARINGS ON DECEMBER 16, 2010

16  AND ON MARCH 29, 2012 (¶¶ 71 & 73)), BUT FAILED TO ACT, AND

17  CORRECT THEM, SHE VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS

18  UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES

19  CONSTITUTION.

20      175.          WHEN DEFENDANTS GIPSON, CASTRO, PINA,

21  SOLINAN AND BEER DEPRIVED PLAINTIFF OF A LIBERTY INTEREST

22  WITHOUT DUE PROCESS OF LAW BY DENYING PLAINTIFF MEANINGFUL

23  AND TIMELY PERIODIC REVIEWS OF HIS CONTINUED LONG TERM AND

24  INDEFINITE SOLITARY S.H.U. CONFINEMENT AS DECLARED HEREIN

25  AT ¶¶ 63-76 SUPRA, THEY VIOLATED PLAINTIFF'S DUE PROCESS

26  RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.

27      176.          WHEN DEFENDANTS KERNAN AND CHAUS ACTED

28  AS SUPERVISORS AND WERE RESPONSIBLE FOR SUPERVISING,

1  REVIEWING AND IMPLEMENTING THE C.D.C. PRISON GANG VALIDATION

2  AND PERIODIC REVIEW POLICIES AS DECLARED HEREIN THAT

3  DEPRIVED PLAINTIFF OF HIS CONSTITUTIONAL DUE PROCESS RIGHTS,

4  KNEW AND ADMITED, THAT SUCH POLICIES WERE DEFICIENT AND

5  REQUIRED CHANGING ( SEE ) E.G., EXHIBITS ' 37 '; ' 69 ' & ' 70 '

6  HERETO ) AND YET FAILED TO ACT TO CORRECT THEM; THEY

7  VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE

8  FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION .

9

10               SECOND CAUSE OF ACTION

11          ( EIGHTH AND FOURTEENTH AMENDMENTS )

12

13     177.               AS DECLARED HEREIN AT ¶¶ 64-66; 71-75;

14  127; AND 151 *SUPRA* ) DEFENDANTS GIPSON; FINA; SOLIMAN AND

15  NAVARRO; HAVE EACH TOLD PLAINTIFF THAT IF HE WANTED OUT OF

16  THE S.H.U. AND/OR ALLIVIATE SUCH CONDITIONS AND/OR SAID

17  DEPRIVATIONS; HE NEEDED TO DEBRIEF . SUCH A POLICY OF

18  HOLDING PLAINTIFF IN PROLONGED ISOLATED AND SOLITARY

19  CONFINEMENT IN THE S.H.U. FOR OVER A DECADE UNTILL HE

20  DEBRIEFS IS; AS ONE COURT PUT IT; "TANTAMOUNT TO

21  ADMINISTRATIVE SEGREGATION FOR SILENCE — AN INTOLERABLE

22  PRACTICE IN MODERN SOCIETY." *GRIFFIN V. GOMEZ*; NO. C-98-21038,

23  SLIP OP. AT 11 (N.D. CAL. 6/28/06). IT IS CRUEL AND UNUSUAL

24  PUNISHMENT FOR THESE DEFENDANTS TO COERCE PLAINTIFF TO

25  PROVIDE INFORMATION — BY MAINTAINING HIM IN STIFLING AND

26  PUNITIVE CONDITIONS THAT CONSTITUTE AN ATYPICAL AND

27  SIGNIFICANT HARDSHIP; UNLESS HE DEBRIEFS .

28     176.               PRISONERS WHO DEBRIEF INCUR A

1  SUBSTANTIAL RISK OF SERIOUS HARM AND RETALIATION TO

2  TO THEMSELVES AND TO THEIR FAMILIES. *Id.* AT ¶ 40; FOOT NOTE

3  ONE; EXHIBIT 'FOUR' HERETO; AND *WILKINSON V. AUSTIN*, 545 U.S.

4  209, AT 227 (2006) ("TESTIFYING AGAINST; OR OTHERWISE

5  EXPOSING ON; GANG ACTIVITIES CAN INVITE ONE'S OWN DEATH

6  SENTENCE"). THE COMBINATION OR THE CRUSHING CONDITIONS IN

7  S.H.U.; THE POLICIES DESIGNED TO COERCE PRISONERS TO

8  DEBRIEF; THE LACK OF ANY TIMELY AND MEANINGFUL REVIEWS

9  OR ANY EFFECTIVE MEANS OF OBTAINING RELEASE FROM THE S.H.U.

10  WITHOUT DEBRIEFING; AND THE SUBSTANTIAL RISK OF SERIOUS

11  HARM IF ONE DOES DEBRIEF; PUTS PLAINTIFF IN AN UNTENABLE

12  POSITION AND CONSTITUTES AN UNCONSTITUTIONAL THREAT TO

13  HIS SAFETY IN VIOLATION OF THE EIGHTH AND FOURTEENTH

14  AMENDMENTS TO THE UNITED STATES CONSTITUTION.

15         177.              DEFENDANTS KERNAN; CHAUS; GIPSON;

16  PIÑA; SOLINAN AND NAVARRO WERE MADE AWARE OF SUCH RISK

17  THROUGH THE PRISONER HUNGER STRIKES AND THE STATE

18  SENATE   COMMITTEE HEARING (EXHIBIT '37' HERETO — WHICH

19  DEFENDANTS KERNAN AND CHAUS. ATTENDED) AND THROUGH

20  PLAINTIFF'S GRIEVANCES (EX. '71' AND '80') AND THEREFORE

21  ACTED WITH DELIBERATE INDIFFERENCE TO THE POSSIBLE

22  CONSEQUENCES TO PLAINTIFF AND HIS FAMILY. MOREOVER; THE

23  RISK TO PRISON "SNITCHES" (*MADRID*; AT 1241) AND THE

24  REPERCUSSIONS IS "LONG STANDING; PERVASIVE; WELL

25  DOCUMENTED AND OBVIOUS." *FARMER V. BRENNAN*; 511 U.S. 825;

26  842 (1994). WHEREFORE; WHEN DEFENDANTS GIPSON; PIÑA;

27  SOLINAN; AND NAVARRO TOLD PLAINTIFF TO DEBRIEF INORDER TO

28  ALLEVIATE THE CONDITIONS AND DEPRIVATIONS AS STATED

1  HEREIN  AND TO OBTAIN  HIS  RELEASE FROM INDEFINITE  AND

2  SOLITARY  S.H.U.  CONFINEMENT )  THEY HAVE VIOLATED  PLAINTIFF'S

3  EIGHTH AND  FOURTEENTH  AMENDMENT  RIGHTS  WITH DELIBERATE

4  INDIFFERENCE .

5      178.          WHEN DEFENDANTS  KERNAN  AND  CHAUS

6  WERE AWARE  OF  SUCH  RISK  AND  POLICY OR "SWITCH ) PAROLE OR

7  DIE " (VIA THE PRISONER HUNGER STRIKES AND AT THE SENATE HEARING

8  - EX. '37 ' )  AS THE ONLY EFFECTIVE MEANS FOR A VALIDATED PRISONER

9  TO SECURE HIS RELEASE FROM THE S.H.U. ) BUT FAILED TO ACT TO

10  PREVENT  OR CORRECT IT , THEY HAVE VIOLATED PLAINTIFFS EIGHTH

11  AND FOURTEENTH AMENDMENT RIGHTS TO THE UNITED STATES

12  CONSTITUTION WITH DELIBERATE INDIFFERENCE .

13

14            THIRD  CAUSE OF ACTION

15     ( EIGHTH AMENDMENT - RISK TO PLAINTIFF'S HEALTH )

16      179.          WHEN DEFENDANTS CASILLAS , RAMIREZ , HATSE ,

17  NAVARRO , LERMA , MOSS AND GRAY CONTINUALLY PREPARE (D) AND

18  SERVE(D) PLAINTIFF'S FOOD IN THE UNSANITARY AND UNHEALTHFUL

19  MANNER AND CONDITIONS AS DESCRIBED ABOVE AT ¶¶ 84-90 ) AND

20  EXHIBITS '18 '- '29 ' (PRISONER DECLARATIONS) ATTACHED HERETO , THEY

21  HAVE VIOLATED PLAINTIFF'S RIGHT UNDER THE EIGHTH AMENDMENT TO

22  THE U.S. CONSTITUTION BY THEIR DELIBERATE INDIFFERENCE TO HIS HEALTH .

23      180.          WHEN DEFENDANTS GIPSON , CASTRO , HANSEN ,

24  FUENTES , UHLIK , AND BEER WERE MADE AWARE OF THESE VIOLATIONS

25  VIA THE PRISONER HUNGER STRIKES ) CAPTAINS MEETINGS (EX.'S '38 '-

26  '41 ') AND PLAINTIFF'S GRIEVANCES ( EX.'S '72 ' & '73 ' ) AND YET FAILED

27  TO ACT TO PREVENT OR CORRECT THEM ) THEY HAVE VIOLATED

28  PLAINTIFF'S EIGHTH AMENDMENT RIGHTS BY THEIR DELIBERATE

1  INDIFFERENCE TO PLAINTIFF'S HEALTH AND BY THEIR FAILURE TO

2  PROPERLY ADMINISTER, TRAIN AND SUPERVISE.

3     181.          WHEN DEFENDANTS LERMA, HAYSE, NAVARRO,

4  CASTRO AND GIPSON FAILED, AND CONTINUE TO FAIL, TO PROVIDE

5  PLAINTIFF WITH ADEQUATE CLEANING SUPPLIES AND TOOLS

6  NECESSARY TO MAINTAIN SANITARY AND SAFE LIVING CONDITIONS

7  AS DESCRIBED HEREIN AT ¶¶ 96-109 SUPRA, THEY HAVE VIOLATED

8  PLAINTIFF'S EIGHTH AMENDMENT RIGHTS BY THEIR DELIBERATE

9  INDIFFERENCE TO PLAINTIFF'S HEALTH.

10

11               FOURTH CAUSE OF ACTION

12    ( EIGHTH AMENDMENT - MENTAL HEALTH CONDITION AND NEEDS )

13     182.          WHEN DEFENDANTS SOLIMAN, BLANCHARD AND

14  GONZALES ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S

15  SERIOUS MENTAL HEALTH CONDITION AND NEEDS AS DESCRIBED AT

16  ¶¶ 110-130 SUPRA, THEY HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER

17  THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

18     183.          WHEN DEFENDANTS BYLUND AND BLANCHARD

19  WERE MADE AWARE OF THESE VIOLATIONS VIA PLAINTIFF'S

20  ADMINISTRATIVE GRIEVANCES ( EXHIBITS '74'-'76' ) AND YET

21  FAILED TO ACT TO PREVENT OR CORRECT THEM, THEY HAVE

22  VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS WITH

23  DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MENTAL

24  CONDITION AND NEEDS AND BY THEIR FAILURE TO PROPERLY

25  ADMINISTER, TRAIN AND SUPERVISE.

26  //

27  //

28  //

FIFTH CAUSE OF ACTION

(FIRST AMENDMENT — RETALIATION)

184.            WHEN DEFENDANT BEER MADE VERBAL THREATS OF RETALIATION AGAINST PLAINTIFF FOR ASSISTING OTHER PRISONERS WITH FILING GRIEVANCES, LEGAL WORK AND FOR FILING HIS OWN AS DESCRIBED HEREIN ABOVE AT ¶¶ 131-137, WHICH WAS NOT A LEGITIMATE PENOLOGICAL GOAL, BUT RATHER, INTENDED TO CHILL OR SILENCE PLAINTIFF FROM FURTHER FIRST AMENDMENT ACTIVITIES, HE VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

185.            WHEN DEFENDANT HAYSE RANSACKED PLAINTIFF'S CELL, TOOK AND THREW AWAY HIS LEGAL PAPERS AND LAW BOOKS AND THEREAFTER THREATENED PLAINTIFF WITH FURTHER HARASSMENT AND RETALIATION FOR EXERCISING PROTECTED ACTIVITIES AS DESCRIBED HEREIN AT ¶¶ 138-140 SUPRA, WHICH WAS NOT A LEGITIMATE PENOLOGICAL GOAL, BUT RATHER, INTENDED TO CHILL OR SILENCE PLAINTIFF FROM FUTURE FIRST AMENDMENT ACTIVITIES, SHE VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS.

186.            WHEN DEFENDANT SOLIMAN GAVE PLAINTIFF'S INFORMAL GRIEVANCE AND NON-GANG RELATED ART WORK TO THE I.G.I. (GANG INVESTIGATOR) "BECAUSE OF HIS COMPLAINING", AS DESCRIBED HEREIN ABOVE AT ¶¶ 122-130, WHICH WAS AGAINST C.D.C. AND FEDERAL "DOCTOR-PATIENT PRIVILEGE" AND WAS NOT A LEGITIMATE PENOLOGICAL GOAL, BUT RATHER, RETALIATION FOR HIS COMPLAINT AND INTENDED TO CHILL OR SILENCE HIM FROM FUTURE COMPLAINTS ABOUT HER OR THE MENTAL HEALTH DEPARTMENT, SHE VIOLATED HIS FIRST AMENDMENT RIGHTS.

187.                  WHEN DEFENDANT BLANCHARD AUTHORIZED,
CONDONED, RATIFIED, APPROVED AND KNOWINGLY ACQUIESCED IN
ILLEGAL, UNCONSTITUTIONAL AND RETALIATORY ACTION ABOVE
AS DESCRIBED HEREIN AT ¶ 123 SUPRA, SHE VIOLATED PLAINTIFF'S
RIGHTS UNDER THE FIRST AMENDMENT TO THE U.S. CONSTITUTION.


## SIXTH CAUSE OF ACTION

( FIRST AMENDMENT – INTERFERENCE/BREACH OF LEGAL MAIL )


188.                  WHEN DEFENDANT GUTIERREZ–RUSSELL
INTERFERED WITH AND BREACHED PLAINTIFF'S COURT AND COURT
APPOINTED ATTORNEYS' CORRESPONDENCES AS DESCRIBED HEREIN
AT ¶¶ 141–151, WHICH DID NOT ADVANCE LEGITIMATE PENOLOGICAL
GOALS AND WAS NOT TAILORED NARROWLY ENOUGH TO ACHIEVE
SUCH GOALS, SHE VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS
UNDER THE UNITED STATES CONSTITUTION AND FEDERAL COMMON
LAW TO UNOBSTRUCTED AND CONFIDENTIAL COMMUNICATIONS
WITH THE COURTS AND WITH ATTORNEYS AND THEIR ASSISTANTS.


## SEVENTH CAUSE OF ACTION

( FIRST AMENDMENT – DENIAL OF ACCESS TO THE COURTS )


187.                  WHEN DEFENDANTS CRIBBS AND PARRA
REJECTED AND REFUSED TO PROCESS PLAINTIFF'S GRIEVANCES FOR
REASONS INCONSISTENT WITH AND UNSUPPORTED BY C.D.C. RULES AS
HEREIN ABOVE AT ¶¶ 152–160, THEY HAVE INTERFERRED WITH
PLAINTIFF'S RIGHT TO PETITION THE GOVERNMENT FOR REDRESS
OF GRIEVANCES AND THEREFORE DENIED HIM OF HIS FIRST

1  AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION OF

2  ACCESS TO THE COURTS .

3

4                          VI .

5                      CAUSATION

6          AS A DIRECT AND PROXIMATE RESULT OF THE AFOREMENTIONED

7  ACTS AND OMISSIONS ON THE PART OF THE DEFENDANTS , PLAINTIFF HAS

8  SUFFERED AND CONTINUES TO SUFFER GENERAL AND SPECIAL DAMAGES

9  IN AN AMOUNT TO BE PROVED AT TRIAL ... PLAINTIFF HAS NO PLAIN ,

10  ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS

11  HEREIN . PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPARABLY

12  INJURED BY THE CONDUCT OF THE DEFENDANTS UNLESS THE COURT

13  GRANTS THE DECLATORY AND INJUNCTIVE RELIEF WHICH PLAINTIFF

14  SEEKS .

15

16                          VII .

17     EXHAUSTION OF ADMINISTRATIVE REMEDIES

18     190.              PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE

19  REMEDIES AS FOLLOWS :

20          (a.)          C.D.C. 602 APPEAL LOG NO. COR-11-00140 ,

21  RE : *FIRST CAUSE OF ACTION — DENIAL OF FEDERAL DUE PROCESS , FAILURE TO TRAIN ,*

22  *SUPERVISE & ADMINISTER ;* ATTACHED HERETO AS EXHIBIT `68` .

23          (b.)          C.D.C. 602 APPEAL LOG NO.'S COR-12-00709 ;

24  COR-12-02118 ; AND COR-12-0045 ; RE : *FIRST CAUSE OF ACTION — FAILURE*

25  *TO PROVIDE TIMELY & MEANINGFUL PERIODIC REVIEWS ;* ATTACHED HERETO AS

26  EXHIBITS `71` ; `77` ; AND `78` .

27          (c.)          C.D.C. 602 APPEAL LOG NO. COR-12-00709 ,

28  RE : *SECOND CAUSE OF ACTION — COERSION TO DEBRIEF / RISK TO SAFETY ,*

1   ATTACHED HERETO AS EXHIBIT '71'.

2   (d.)   C.D.C. 602 APPEAL LOG NO.'s C3PC-6-11-

3   06119 ; AND COR-09-00683 ; RE: *THIRD CAUSE OF ACTION - UNSANITARY*

4   *FOOD PREPARATION AND SERVICE ; FAILURE TO SUPERVISE ; TRAIN & ADMINISTER*,

5   ATTACHED HERETO AS EXHIBITS '73' AND '72'.

6   (e.)   C.D.C. HEALTH CARE APPEAL LOG NO.'s

7   COR-HC-11045129; COR-HC-11045862 ; AND COR-HC-11048907,

8   RE: *FOURTH CAUSE OF ACTION - DELIBERATE INDIFFERENCE TO MENTAL HEALTH*,

9   *FAILURE TO PROPERLY MANAGE ; SUPERVISE ; TRAIN & ADMINISTER ;* ATTACHED

10   HERETO AS EXHIBITS '74' ; '75'; AND '76'.

11   (f.)   C.D.C. 602 APPEAL LOG NO. C3PC-6-10-00438,

12   RE: *FIFTH CAUSE OF ACTION - RETALIATION ;* ATTACHED HERETO AS EX. '80'.

13   (g.)   C.D.C. 602 APPEAL LOG NO. C3PC-6-12-

14   06512 ; RE: *SIXTH CAUSE OF ACTION - INTERFERENCE & BREACH OF LEGAL &*

15   *CONFIDENTIAL MAIL ;* ATTACHED HERETO AS EXHIBIT '79'.

16   191.   IN REGARDS TO ANY OF THE ABOVE APPEALS

17   BEING PARTIALLY GRANTED AND NOT SUBMITTED TO A HIGHER

18   LEVEL REVIEW ( I.E., EXHIBIT '73' AND '79' (AT (d.) & (g.) SUPRA ) ) ;

19   THESE APPEALS ARE FULLY EXHAUSTED :

20   "AN INMATE HAS NO OBLIGATION TO APPEAL FROM A
     GRANT OF RELIEF ; OR A PARTIAL GRANT THAT
21   SATISFIES HIM ; IN ORDER TO EXHAUST HIS ADMIN-
     ISTRATIVE REMEDIES ". *HARVEY V. JORDAN ;* 605 F.3d.
22   681 ; 685 (9TH. CIR. 2010 ).

23   192.   PLAINTIFF FURTHER ASSERTS AND DECLARES

24   THAT DEFENDANTS' THREATS OF RETALIATION AND IMPROPER REJECTIONS

25   OF HIS GRIEVANCES AS STATED ABOVE AT ¶¶ 184-187 AND 152-160,

26   HAVE RENDERED SUCH REMEDIES "EFFECTIVELY UNAVAILABLE".

27   *SAPP V. KIMBRELL ;* 623 F.3d. 813 ; 823 (9TH. CIR. 2010 ). AS SUCH,

28   PLAINTIFF HAS FULLY EXHAUSTED ADMINISTRATIVE REMEDIES HEREIN.

## VIII.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS FOR THE FOLLOWING RELIEF :

1.    ISSUE A DECLATORY JUDGMENT THAT THE DEFENDANTS' ACTS AND FAILURES TO ACT AS DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS UNDER THE UNITED STATES CONSTITUTION AND AS OTHERWISE ALLEGED HEREIN ;

2.    AWARD PLAINTIFF MONETARY DAMAGES, COMPENSATORY AND PUNITIVE, IN AN AMOUNT TO BE DETERMINED AT TRIAL ;

3.    AWARD PLAINTIFF THE COST OF SUIT AND REASONABLE ATTORNEY FEES ;

4.    GRANT PLAINTIFF A TRIAL BY JURY ; AND

5.    GRANT PLAINTIFF SUCH OTHER AND FURTHER RELIEF AS THE COURT DEEMS JUST AND PROPER .

## IX.

### VERIFICATION

I, MICHAEL ANTHONY SAAVEDRA, HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, EXECUTED ON JULY 8, 2013, AT CORCORAN, CALIFORNIA .

MICHAEL ANTHONY SAAVEDRA
PRO SE PLAINTIFF

APPENDIX 'A'

( DEFENDANTS' PLACE OF BUSINESS ADDRESSES )

1. SCOTT KERNAN ) UNDERSECRETARY ) C.D.C.
   1515 - S. STREET ) SUITE No. 502
   SACRAMENTO ) CA. 94283 .

2. ANTHONY CHAUS ) CHIEF ) OFFICE OF
   CORRECTIONAL SAFETY ) C.D.C.
   2880 SUNRISE BLVD. ) SUITE 130
   RANCHO CORDOVA ) CA. 95742 .

3. DOUGLAS MC CLURE ) AGENT ) OFFICE OF
   CORRECTIONAL SAFETY ) C.D.C.
   2880 SUNRISE BLVD. ) SUITE 130
   RANCHO CORDOVA ) CA. 95742 .

4. CONNIE GIPSON ) WARDEN ,
   CORCORAN STATE PRISON ) C.D.C.
   4001 KING AVENUE
   CORCORAN , CA. 93212 .

5. JEANINE CASTRO ) CAPTAIN ,
   CORCORAN STATE PRISON ) C.D.C.
   4001 KING AVENUE
   CORCORAN ) CA. 93212 .

6. S. PINA ) LIEUTENANT ) I.G.I. ,
   CORCORAN STATE PRISON ) C.D.C.
   4001 KING AVENUE
   CORCORAN ) CA. 93212 .

7. O. J. RUIZ ) LIEUTENANT ) I.G.I. ,
   CORCORAN STATE PRISON ) C.D.C.
   4001 KING AVENUE
   CORCORAN ) CA. 93212 .

8. R. BEER ) SERGEANT ,
   CORCORAN STATE PRISON ) C.D.C.
   4001 KING AVENUE
   CORCORAN ) CA. 93212 .

9. J. ORTEGA ) PRISON GUARD,
   CORCORAN STATE PRISON ) C.D.C.
   4001 KING AVENUE
   CORCORAN ) CA. 93212 .

10. R. CASILLAS ) PRISON GUARD ,
    CORCORAN STATE PRISON ) C.D.C.
    4001 KING AVENUE
    CORCORAN, CA. 93212 .

11.    RAMIREZ ) PRISON GUARD (FEMALE),
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

12.    HAYSE ) PRISON GUARD (FEMALE),
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

13.    LERMA ) PRISON GUARD )
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

14.    S. BYLUND ) PRISON CHIEF OF MENTAL HEALTH,
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE .
       CORCORAN ) CA. 93212 .

15.    T. BLANCHARD ) PRISON SENIOR SUPERVISING
       PSYCHOLOGIST OF MENTAL HEALTH SERVICES ,
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

16.    E. SOLIMAN ) PRISON PSYCHOLOGIST MENTAL HEALTH,
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

17.    GONZALES ) PRISON PSYCHIATRIC TECHNICIAN
       (L.P.T.) MENTAL HEALTH SERVICES ,
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

18.    MOSS ) PRISON NURSE (L.V.N.),
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

19.    GRAY ) PRISON NURSE (L.V.N.) )
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

20.    D. HANSEN ) PRISON SUPERVISOR COOK ,
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

21.    S. FUENTES ) PRISON SUPERVISING COOK ,
       CORCORAN STATE PRISON ) C.D.C.
       4001 KING AVENUE
       CORCORAN ) CA. 93212 .

APPENDIX ( A ) PAGE ii

22.   J. UHLIK , PRISON SUPERVISOR COOK,
      CORCORAN STATE PRISON , C.D.C.
      4001 KING AVENUE
      CORCORAN , CA. 93212 .

23.   A. GUTIERREZ - RUSSELL , PRISON MAIL ROOM SUPERVISOR ,
      4001 KING AVENUE ( CORCORAN STATE PRISON , C.D.C.)
      CORCORAN , CA. 93212 .

24.   NAVARRO , PRISON GUARD ,
      CORCORAN STATE PRISON , C.D.C.
      4001 KING AVENUE
      CORCORAN , CA. 93212 .

25.   KAREN CRIBBS , PRISON APPEALS COORDINATOR,
      CORCORAN STATE PRISON , C.D.C.
      4001 KING AVENUE
      CORCORAN , CA. 93212 .

26.   N. PARRA , PRISON APPEALS COORDINATOR,
      CORCORAN STATE PRISON , C.D.C.
      4001 KING AVENUE
      CORCORAN , CA. 93212 .