UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY SAAVEDRA, | 1:14-cv-00870-EPG |
| Plaintiff, | ORDER FINDING CERTAIN COGNIZABLE CLAIMS AND DISMISSING OTHER CLAIMS |
| vs. | |
| SCOTT KERNAN, et al., | ORDER FOR PLAINTIFF TO EITHER: |
| Defendants. | (1)  FILE AN AMENDED COMPLAINT, |
| | OR |
| | (2)  NOTIFY COURT OF HIS WILLINGNESS TO PROCEED ONLY AGAINST DEFENDANTS AND CLAIMS FOUND COGNIZABLE IN THIS ORDER. |
| | THIRTY-DAY DEADLINE |
| | (Doc.  15.) |

I.      BACKGROUND

      Michael Anthony Saavedra ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on July 25, 2013.  (ECF No. 1).  Plaintiff subsequently filed a first amended complaint (ECF No. 15), which is now before this Court for screening.

On August 12, 2013, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c),[1] and no other parties have made an appearance. (Doc. 4.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

## II.   LEGAL STANDARDS FOR SCREENING

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the

---

[1] On August 12, 2013, Plaintiff filed a form consenting to the jurisdiction of a Magistrate Judge. (ECF. No 4.) Subsequently, on July 7, 2014, Plaintiff filed a form declining the jurisdiction of a Magistrate Judge. (ECF. No 12.) Plaintiff may not withdraw his consent in this manner. Once a civil case is referred to a magistrate judge under section 636(c), the reference can be withdrawn only by the district court, and only for good cause shown on its own motion, or under extraordinary circumstances shown by any party. Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993) (quoting Fellman v. Fireman's Fund Ins. Co., 735 F.2d 55, 58 (2d Cir. 1984)); 28 U.S.C. § 636(c)(6); Fed. R. Civ. P. 73(b). There is no absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge. Dixon at 480. In this case, Plaintiff has not shown good cause or extraordinary circumstances for the court to withdraw the reference of this case to a Magistrate Judge.

plaintiff's claim is and the grounds upon which it rests." <u>Swierkiewicz</u>, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

## III.    ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff claims that he was wrongfully retained in the Security Housing Unit (SHU) in solitary confinement for over a decade on the basis of coerced, erroneous, false, unreliable and unreasonable allegations of gang activity without Due Process of the law.  He claims that he was not given sufficient notice of information to adequately prepare and present his views, did not have a meaningful opportunity to present any views to the critical decision maker, and was not given any meaningful periodic review.

Specifically, on April 15, 2004, Plaintiff was placed in Administrative Segregation Confinement for confidential informant allegations of having a romantic relationship with a female prison guard.  Two days later, he was asked to "debrief," i.e., inform against the female guard and others.  When he refused, the Internal Affairs Unit asked their counterpart at the Instituional Gang Investigators (IGI) to begin developing and approving a validation of Plaintiff as a prison gang associate of the "Mexican Mafia."  Plaintiff was then validated as a gang member and given an indefinite SHU term beginning in January 2008.  One month later, IGI generated a document claiming Plaintiff had alleged safety concerns with the Mexican Mafia based on an allegation that Plaintiff was in "bad standings" with the Mexican Mafia and was taken "off program."

From 2008 until 2013, Plaintiff appeared for periodic 180-day reviews, which lasted less than 8 minutes and focused on whether Plaintiff was suicidal and whether Plaintiff was now willing to "debrief."  The IGI reviews stated that Plaintiff's gang status classification would not be reviewed for 6 years unless he debriefed.

Six years into the SHU term, Plaintiff was told that IGI was going to revalidate him based on second hand/hearsay allegations that Plaintiff owes an unidentified gang member a debt for unspecified reasons.  There was also information from 2006 concerning a Pelican Bay inmate telling a sergeant that Plaintiff was the "shot-caller" in contact with an unnamed gang member.  Plaintiff was given an opportunity to write down any comments.  Plaintiff asked to have a personal interview with the decision maker.  Prison officials responded that "this written response is your interview and is all you got coming."  On November 12, 2010, Plaintiff was re-validated.

Plaintiff claims that such conditions of confinement violated the Eighth Amendment. He alleges that Plaintiff is substantially deprived of human contact and interaction.  He spends nights and days in a cell the size of a dog kennel.  It is all concrete except for stainless steel sink/toilet.  It is cold in the winter and hot in the summer.  Exercise occurs in a fenced-in cage, which is dirty and unsanitary.  His out door exercise is often cancelled for "shortage of guards" and other excuses.  Plaintiff is prohibited from any phone calls absent a death of an immediate family member or a court-ordered attorney call.  Visits with family are limited to one hour with no physical contact.

Plaintiff was never charged with a CDC rule violation for any specific gang activity.

Plaintiff also claims that he was given unsanitary food and inadequate cleaning supplies for basic sanitation.  Due to the method of preparation, the food trays are stacked on dirty-unsanitized push carts, which are used for dirty, soiled laundry and trash.  The food is always cold and contaminated by dust, flies, and mosquitoes.  The staff supplying the food do not wear any hairnets, kitchen caps or other sanitary devices.

Polainitff also lacked adequate cleaning supplies and safe living conditions.  Plaintiff lacks soap, disinfectant, mop, broom, or extra towel.

Following a hunger strike, certain prison officials met to discuss prisoner complaints about living conditions.  But the conditions were not remedied.

Plaintiff also brings a claim based on deliberate indifference to Plaintiff's mental health. Plaintiff alleges that the decade in solitary confinement resulted in major depression and sleep

disorder.  The mental health care was woefully inadequate.  Although the prison was supposed to monitor prisoners suffering from mental health issues, this sometimes consisted of walking through the unit to slide a cross-word puzzle under the door.  Although operational procedures require private consultations, many of these were missed for invalid reasons.  Plaintiff sought various forms of treatment, including social skills training, education and work programs, but was denied.

Plaintiff also brings a claim for violation of the First Amendment for retaliation. Plaintiff alleges that multiple prison officers threatened him and intimated him in an attempt to stop him from complaining.  For example, Defendant Beer told Plaintifff that he did "not like jail-house lawyers" and that if Plaintiff kept filing 602 complaints, he would move them and take all their property.  Defendant Beer also told Plaintiff "if you start up again with all your crying and filing 602's, I'm going to move your a@# out of the building and take all of your property and make your life miserable, and no, I'm not going to approve you to assist anyone with legal work, so don't even both submitting anymore requests."  Defendants denied Plaintiff's request to provide legal assistance to other inmates.  Defendant Hayse also searched Plaintiff's cell and told Plaintiff "How do you like my cell searches?...Keep on complaining about things to the warden and next time I'll throw away all your legal crap and move you to one-left."

Plaintiff next brings a claim for interference and breach of confidential attorney-client communications.  Plaintiff received pro bono assistance of counsel in certain cases.  In June of 2012, Defendants began a systematic and continuous pattern of opening and reviewing Plaintiff's confidential attorney-client and legal mailings without his consent.  Defendants also returned certain legal mail without providing it to Plaintiff.  Certain of the opened mail concerned correspondence regarding settlement strategy.  At one point, Defendant Ortega told Plaintiff "I heard you like to sue IGI's and file a lot of complaints, so I have to read all of your mail and make sure you aren't trying to sue us."

\\\

\\\

Plaintif also brings a claim for denial of right of access to the courts.  Plaintiff alleges that defendant interfered with the internal prison grievance system by imposing substantial roadblocks to filing and pursuing a grievance.

Finally, Plaintiff brings a claim for failure to train and supervise, alleging that the violations are part of a custom and practice at the prison.

Plaintiff names approximately 26 individuals related to Corcoran State Prison.

## IV.    SOLITARY CONFINEMENT

### a.  Legal Standards

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672-73 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003); Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir. 1997); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir. 1995); Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993).

Liberty interests can arise both from the Constitution and from state law. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayse, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary

incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin, 515 U.S. at 481-84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007); Jackson, 353 F.3d at 755; Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). When conducting the Sandin inquiry, Courts should look to Eighth Amendment standards as well as the prisoners' conditions of confinement, the duration of the sanction, and whether the sanctions will affect the length of the prisoners' sentence. See Serrano, 345 F.3d at 1078; Ramirez, 334 F.3d at 861; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin. See Wilkinson, 545 U.S. at 224. The "atypicality" prong of the analysis requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. See Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997). A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86; see also Keenan, 83 F.3d at 1088–89. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." Chappell v. Mandeville 706 F.3d 1052, 1061 (9th Cir. 2013) (citing Wilson, 501 U.S. at 304).

To determine if the Plaintiff's removal to solitary confinement constitutes an "atypical and significant hardship," the Court examines: (1) the extent of difference between segregation and general population; (2) the duration and intensity of the conditions confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *Cepero,* 2015 WL 1308690 at *14; *see also Sandin,* 515 U.S. at 486–87. "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis,* 345 F.3d 1071, 1078

(9th Cir.2003). Furthermore, "the decision to hold an inmate in administrative segregation imposes few procedural burdens on prison officials." *Cepero,* 2015 WL 1308690 at *14. A prison official provides adequate due process by "holding an informal, non-adversarial evidentiary hearing within a reasonable time after administrative segregation begins." *Id.*

The assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As such, Plaintiff is entitled to the minimal procedural protections set forth in Toussaint, such as notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d at 1100). Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is 'some evidence' from which the conclusion of the administrative tribunal could be deduced. Id. at 1105. The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation. See Bruce, 351 F.3d at 1287-88.

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at 1100, abrogated in part on other grounds by Sandin, 515 U.S. 472. The Supreme Court has stated that five days is a reasonable time for the post-placement review. See Hewitt, 459 U.S. at 477. Before the review, the prisoner must receive some notice of the charges and be given an opportunity to respond to the charges. See id. at 476; Mendoza, 960 F.2d at 1430-31; Toussaint, 801 F.2d at 1100. The prisoner, however, is not entitled to

"detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Toussaint, 801 F.2d at 1100-01 (citations omitted). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101.   Annual review of the placement is insufficient. See Toussaint, 801 F.2d at 1101.

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of...subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

### b.  Application to Plaintiff's Allegations

Based on Plaintiff's allegations, including the long length of solitary confinement, the Court finds that Plaintiff's detention was a "dramatic departure" from the standard conditions of confinement, and therefore Plaintiff had a liberty interest in avoiding his detention.   Thus, Plaintiff was entitled to due process.

The Court finds that Plaintiff has stated a claim for violation of due process regarding his solitary confinement.   The Court notes that, according to the law cited above, judicial review of a prison's decision is narrow and deferential.   It is not clear on the face of the complaint whether the prison's evidence, even as described by Plaintiff, would be considered satisfactory based on this the lenient standard.   Nevertheless, taken as a whole, Plaintiff has stated a case demonstrating little if any evidence of gang membership, little or no meaningful review, little or no opportunity to be heard.   Given the extreme length of the confinement, and construing the complaint in favor of the Plaintiff, Plaintiff has set forth a Due Process challenge to his confinement to the SHU.

\\\

Keeping in mind the law regarding lack of supervisory liability, the Court finds that the claim regarding lack of due process has been sufficiently stated regarding the following defendants:

- Defendant Anthony Chaus, Chief of the Office of Correctional Safety (OCS), which investigates and validates CDC prisoners affiliated with prison gangs and oversees the IGI;

- Defendant Douglas McClure, a special agent of the OCS who reviewed gang validation requests submitted by the IGI for approval or rejection, and was responsible for ensuring due process for gang validations;

- Defendant S. Pina, CSP IGI responsible for reviewing, investigating, and recommending CSP prisoners gang status every 180 days, and also advised Plaintiff that if he debriefed, he would be let out of the SHU, and if not, he would simply remain in the SHU indefinitely "unless he paroled or died," and who told Plaintiff that none of his opinions mattered and they would not review his gang status or possible release from the SHU until 2015 or unless he debriefed;

- Defendant D.J. Ruiz, the CSP IGI and critical decision maker in Plaintiff's revalidation/gang status review.

- Defendant J. Ortega, a CSP prison guard assigned as the IGI's assistant, who told Plaintiff "this written response is your interview and is all you got coming."

- Defendant Gipson, who conducted an ICC review and approved of Plaintiff's indefinite SHU confinement, and who told Plaintiff that none of his opinions mattered and they would not review his gang status or possible release from the SHU until 2015 or unless he debriefed;

- Defendant Soliman, who conducted an ICC review and approved of Plaintiff's indefinite SHU confinement;

- Defendant Castro, who conducted an ICC review and approved of Plaintiff's indefinite solitary SHU confinement; and

- Defendant Beer, who conducted an ICC review and approved of Plaintiff's indefinite solitary SHU confinement, and also advised Plaintiff that if he debriefed, he would be let out of the SHU, and if not, he would simply remain in the SHU indefinitely "unless he paroled or died."

## V.     CONDITIONS OF CONFINEMENT

### a.  **Legal Standards**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Prison conditions that are restrictive and harsh are part of ordinary prison life and do not fall under Eighth Amendment protection. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Only those deprivations denying the minimal civilized measure of life's necessities are sufficient to implicate the Eighth Amendment. Hudson, 503 U.S. at 9; see e.g., Johnson, 217 F.3d at 732–733 (substantial deprivations of shelter, food, drinking water and sanitation for four days sufficiently serious to satisfy objective component of Eighth Amendment claim); Hearns v. Terhune, 413 F.3d 1036, 1041–42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for period of nine months enough to state claim of

unconstitutional prison conditions).  For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Helling v. McKinney, 509 U.S. 25, 35 (1993). The subjective element requires a showing that the defendant acted with a sufficiently culpable state of mind.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Ninth Circuit has utilized a highly factual approach to determining whether certain conditions rise to an unconstitutional level.  For example, the Ninth Circuit reversed the district court's dismissal of a conditions of confinement claim with allegations about a lack of water, though it was not clear whether there was no water available, no cold water, or no ice water. The Ninth Circuit noted that the complaint alleges "health hazards" and "serious health concerns," in upholding the claim at the pleading stage.  Hearns v. Terhune, 413 F.3d 1036, 1043 (9th Cir. 2005); see also Johnson, 217 F.3d at 732 (noting that "[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing").

Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation. Keenan v. Hall (9th Cir. 1996) 83 F.3d 1083, 1089-90, opinion amended on denial of reh'g (9th Cir. 1998) 135 F.3d 1318.  Moreover, "inmates have the right to personal hygiene supplies such as toothbrushes and soap. Keenan, 83 F.3d at 1091; see also Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) (the Eighth Amendment guarantees sanitation); Toussaint, 597 F.Supp. at 1411 (the Eighth Amendment guaranties personal hygiene). Additionally, "[f]ood that is spoiled and water that is foul would be inadequate to maintain health."  Keenan, 83 F.3d at 1091.  Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations. Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986).

**b.   Analysis of Plaintiff's Conditions of Confinement Claim**

The Court finds that Plaintiff has stated a claim for a violation of the Eighth Amendment based on conditions of confinement.   The Court acknowledges that solitary confinement itself is not a violation of the Eighth Amendment, albeit with due process limitations as described above.   And many of the described conditions could be applied to every solitary confinement.   Nevertheless, Plaintiff has alleged facts which, liberally construed, could form the basis of a viable claim for unconstitutional conditions of confinement, including lack of sanitary food and hygene products and lack of outdoor exercise.   Under the very factual analysis required under Ninth Circuit law, and given the long time of Plaintiff's confinement, the Court will not dismiss this claim at the pleading stage.

The Court finds that the claim applies to the following individual defendants, based on the Plaintiff's allegations:

- Defendant Casillas, a CSP prison guard responsible for making, preparing and serving 4B-4L prisoner's food, cleaning and sanitizing the food serving carts and supplies;

- Defendant Ramirez, a CSP prison guard responsible for making, preparing and serving 4B-4L prisoner's food, cleaning and sanitizing the food serving carts and supplies;

- Defendant Hayse, a CSP prison guard responsible for making, preparing and serving 4B-4L prisoner's food, cleaning and sanitizing the food serving carts and supplies;

- Defendant Lerma, a CSP prison guard responsible for making, preparing and serving 4B-4L prisoner's food, cleaning and sanitizing the food serving carts and supplies; and

- Defendant Navarro, a CSP prison guard responsible for making, preparing and serving 4B-4L prisoner's food, cleaning and sanitizing the food serving carts and supplies.

\\\

13

**VI.      DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

    **a.  Legal Standards**

The Eighth Amendment of the United States Constitution entitles Plaintiff to medical care and is violated when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

    **b.  Analysis of Plaintiff's Allegations**

The Court finds that Plaintiff has not stated a claim for deliberate indifference to his serious medical needs. Plaintiff's allegations largely concern prison officials not adhering to CDCR policy regarding mental health care. But not following policy does not state a constitutional claim. Plaintiff does not allege that he has a medical need for a certain treatment and that failing to treat him could or did result in serious injury. Instead, he alleges that solitary confinement itself caused him depression and sleep deprivation. It is not clear that any mental health treatment in the context of solitary confinement would have prevented his depression and sleep deprivation.

\\\

\\\

\\\

**VII.    RETALIATION**

**a.  Legal Standards**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

**b.  Analysis of Plaintiff's Allegations**

The Court finds that Plaintiff has stated a claim for a violation of the First Amendment. Plaintiff has alleged that correctional officers took an adverse action because of the prisoner filing grievances.  Drawing all inferences in favor of the Plaintiff, the facts alleged would support a finding that the actions chilled the exercise of First Amendment rights and did not advance a legitimate correctional goal.

Specifically, the Court finds that Plaintiff has asserted a viable First Amendment claim against the following defendants:

-   Defendant Beer
-   Defendant Hayse

**VIII.   INTERFERENCE WITH LEGAL MAIL**

**a.  Legal Standards**

The First Amendment protects against the censorship of incoming inmate mail when not necessary to protect legitimate governmental interests. Wolff v. McDonnell, 418 U.S. 539, 575 (1974).  The mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence does not state a claim for violation of a prisoner's constitutional rights.

15

See Id. at 539, 576–77 (1974); Nordstrom v. Ryan, 762 F.3d 903, 908–909 (9th Cir. 2014); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996).  Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection. See Wolff, 418 U.S. at 576–77; Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981).  Prison officials may open and inspect, but not read, a prisoner's legal mail. Nordstrom v. Ryan, 762 F.3d 903 (9th Cir. 2014). Prison officials may not review outgoing legal mail for legal sufficiency before sending the mail to the court. See Ex Parte Hull, 312 U.S. 546, 549 (1941).  Prison officials may, however, require mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. See Wolff, 418 U.S. at 576-77; Sherman, 656 F.2d at 528.

### b.  Analysis of Plaintiff's Claims

Plaintiff states a First Amendment claim regarding interference with his legal mail.  He has alleged that prison officials read his legal mail without a penological pupose outside of his presence and failed to deliver certain legal mail to him.

Plaintiff has specifically alleged this claim against:

- Defendant Gutierrez-Russeel, the CSP mailroom supervisor
- Defendant Navarro
- Defendant Ortega

## IX.  ACCESS TO COURTS

### a.  Legal Standards

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).   "[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011),

That said, inmates are not entitled to a specific type of grievance process. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.").  In order to allege an access-to-courts

claim, the plaintiff must show an actual injury in the form of a failure to access the courts for a non-frivolous claim.  Lewis v. Casey, 518 U.S. 343, 349–53 (1996) (an access-to-courts claim requires plaintiff to show that defendant's conduct caused actual injury to a non-frivolous legal claim).

### b.   Analysis of Plaintiff's Claims

Plaintiff has failed to state a claim for denial of right of access to the courts.  Plaintiff has alleged that prison officials failed to follow their own process for addressing grievances. But the prison's internal grievance procedure is not a constitutional right.  If Plaintiff filed a claim in court, the availability of the grievance procedure would be relevant to whether Plaintiff could proceed without exhausting his claims through the prison procedure.  But a faulty grievance procedure alone does not state an independent claim.  Moreover, Plaintiff has not alleged that the prison actions resulted in his failure to pursue a non-frivolous claim in court.

### X.   FAILURE TO TRAIN

### a.   Legal Standards

Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference.  See City of Canton v. Harris, 489 U.S. 378, 387–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (A failure to train or supervise may satisfy this criteria if, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that

the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.") However, "[t]he cases in which supervisors have been held liable under a failure to train/supervise theory involve conscious choices made with full knowledge that a problem existed." Wardell v. Nollette, No. C05–0741RSL, 2006 WL 1075220, at *3 (W.D.Wash. Apr.20, 2006) (collecting cases); see also Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (to impose liability for supervisor's failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation") (citation, internal quotation marks omitted), cert. denied, 540 U.S. 826, 124 S.Ct. 181, 157 L.Ed.2d 48 (2003). Also, the identified training deficiency must be causally connected to the ultimate injury. City of Canton, 489 U.S. at 391. In other words, to impose liability, Plaintiffs are required to show that the inadequate training actually caused the constitutional violation and that the violation would have been avoided had the employees been properly trained. Id. at 389–91; See Connick v. Thompson, ––– U.S. –––, 131 S.Ct. 1350, 1360 (2011) (noting that actual or constructive notice that a training program is inadequate and a pattern of similar constitutional violations are usually necessary to demonstrate deliberate indifference for purposes of failure to train).

### b.  Analysis of Plaintiff's Claims

The Court finds Plaintiff's allegations insufficient to state a claim for failure to train. Plaintif alleges that "supervisory Defendants also have a duty to perform and execute their duties in a manner consistent with state a federal law" but failed to do so.  This allegation is too vague and broad and fails to identify a specific practice or policy, facts establishing that such an unconstitutional practice or policy existed, and how it caused Plaintiff specific deprivation of constitutional rights.

### XI.  CONCLUSION AND ORDER

The Court finds that Plaintiff's First Amended Complaint states the following cognizable claims:

-  Lack of due process against Defendants Chaus, McClure, Pina, Ruiz, Ortega, Gipson, Soliman, Castro, and Beer.

18

- Violation of the Eighth Amendment based on conditions of confinement against Defendants Casillas, Ramirez, Hayse, Lerma, Navarro.

- Retaliation in violation of the First Amendment claim against the following defendants: Beer and Hayse

- Obstruction of legal mail in violation of the First Amendment against Defendants Gutierrez-Russell, Navarro, Ortega

The Court finds that Plaintiff's First Amended Complaint fails to state a claim against any other defendants or any other claims against those defendants.

Plaintiff shall be required to either file an amended complaint, notify the Court of his willingness to proceed only on the claims as found cognizable by the Court, or notify the Court that he stands on the Complaint as filed, subject to dismissal of claims consistent with this order.  Note that the Court will proceed to screen any amended complaint.

Should Plaintiff choose to amend the complaint, the Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).  Plaintiff should state clearly, in his own words, what happened and how each defendant's actions violated the particular right described by Plaintiff.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding allegations of events occurring or claims arising after the original Complaint.  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907

n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading.   Local Rule 220.   Once an amended complaint is filed, the prior complaint no longer serves any function in the case.   Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.   The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

(1)   File an amended complaint curing the deficiencies identified in this order, in which case the Court will proceed to screen that amended complaint;

or

(2)   Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the cognizable claims and defendants described above; in which case the Court will begin the process of serving the First Amended Complaint on defendants.

3.   Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:14-cv-00870-EPG-PC; and

\\\
\\\
\\\
\\\
\\\

4.   If Plaintiff fails to comply with this order, this action may be dismissed for failure to comply with a Court order.

IT IS SO ORDERED.

Dated:   **June 24, 2016**                    /s/ *Erica P. Grosjean*
                                        UNITED STATES MAGISTRATE JUDGE